Venus MITCHELL, Plaintiff,

v.

RJK OF GLOUCESTER, INC.,
Kenny Smith, Defendants.

Civ. A. No. 2:95cv616.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 18, 1995.

Jack E. Ferebee, Va. Beach, VA, for plaintiff.

William M. Furr, Willcox & Savage, Norfolk, VA, for defendants.

## OPINION AND ORDER

DOUMAR, District Judge.

This matter is before the Court on defendants' motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

1. By her own characterization, Plaintiff is a

### I. Factual and Procedural Background

On June 15, 1995, Plaintiff Venus Mitchell ("Mitchell") filed a complaint against Defendants RJK of Gloucester, Inc. ("RJK"), trading as "McDonald's Restaurant," and Kenny Smith, the immediate supervisor of Plaintiff. Mitchell was employed with RJK from February, 1986 until her termination on February 15, 1992. Complaint ¶¶ 10, 19. She alleges that she was terminated after informing Defendant Smith that she was pregnant with triplets, and had sought permission from Smith to spend more of her work day seated. Id, ¶¶ 14, 16. Smith would not let Mitchell continue working unless she "execut[ed] a statement exculpating [RJK] from any liability," which Mitchell refused to sign. Id., ¶¶ 17, 18. Mitchell was subsequently discharged. Id., ¶ 19.

Plaintiff brought her case to the Equal Employment Opportunity Commission ("EEOC"). The EEOC found that there was "insufficient evidence" to show racial discrimination against Plaintiff. Complaint, Ex. A, at 1. Having found no violation of Title VII, the EEOC issued Plaintiff a "right to sue" letter. Id. This complaint, which was timely filed, followed.

Plaintiff makes two claims in this action, both of which are brought against both Defendants. Plaintiff first alleges that her discharge was based on her race (she is black),[1] inasmuch as a white female employee and a "light colored" black female employee who have become pregnant were not terminated because of their pregnancy, nor were they "required to sign statements" absolving RJK from liability. Id., ¶ 21. She thus alleges that her discharge violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. (1989 & Supp.1995). Plaintiff next alleges that Defendants failed to provide a "reasonable accommodation" for her pregnancy, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.S. § 12101 et seq. (1989 & Supp.1995).

On July 20, 1995, Defendant Smith moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal

"dark colored" black. Id., ¶ 20.

Rules of Civil Procedure, arguing that he is not an "employer" within the meaning of Title VII or the ADA. Alternatively, Smith contends that Plaintiff has failed to satisfy the administrative prerequisites of Title VII insofar as Smith was not named as a respondent in Plaintiff's charge of discrimination with the EEOC. On July 31, 1995, Defendant RJK moved to dismiss Count II of the Complaint under Rule 12(b)(6), arguing that Plaintiff failed to satisfy the administrative prerequisites of the ADA in that she failed to file a charge of discrimination with the EEOC under the ADA.

Both parties have submitted briefs on each motion. Oral argument was heard by this Court on September 6, 1995. This matter is now ripe for adjudication.

## II. Discussion

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for failure to state a claim upon which relief can be granted. Motions to dismiss are to be granted sparingly: "... a motion to dismiss should not be granted unless the plaintiff can *prove no set of facts* which would entitle him to relief." *Fayetteville Investors v. Commercial Builders,* 936 F.2d 1462, 1466 (4th Cir.1991); *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). In considering a motion to dismiss, the court should construe the complaint favorably to the pleader. *Scheuer ·v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Martin Marietta Corp. v. International Telecommunications Satellite,* 991 F.2d 94, 97 (4th Cir.1992) ("In considering a motion to dismiss, the claims must be construed in the light most favorable to the nonmoving party and its allegations taken as true.").

At the commencement of oral argument on September 6, counsel for plaintiff decided to abandon the claim against Defendant RJK

under Count II of the complaint, i.e., the claim under the Americans with Disabilities Act. Accordingly, Count II of the complaint is DISMISSED.

■ That leaves only the motion of Defendant Smith, and only the count under Title VII.[2] Smith's contention is that he is not amenable to suit under Title VII because that act applies only to employers, not individuals. Smith also urges that he be dismissed because Plaintiff failed to satisfy the administrative prerequisites of Title VII in not naming him in her EEOC charge. It is not necessary to address the latter argument, because the Court finds that Smith is not amenable to suit under Title VII.

By its terms, Title VII applies only to "employers." An "employer" is

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent* of such a person.

42 U.S.C.S. § 2000e(b) (1989 & Supp.1995) (emphasis added). The essential question before this court is whether the use of the term "agent" in the statute makes Defendant Smith amenable to suit in the instant case. This Court is compelled to follow the Fourth Circuit's holding in *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994), where the Court ruled on an analogous provision contained in the Age Discrimination in Employment Act ("ADEA").[3] In *Birkbeck,* the Fourth Circuit reasoned that it would be illogical to hold an individual liable under the ADEA given the statute's special protection for small business owners. The Court concluded that it would be

> incongruous to hold that the ADEA does not apply to the owner of a business employing, for example, ten people, but that it

---

**2.** Because Plaintiff voluntarily relinquished the ADA claim, that statute is no longer before the Court.

**3.** The definition of "employer" in the ADEA is a mirror image of that found in Title VII. 29

U.S.C. § 630(b). The only distinction is one not relevant here: it is limited to firms with 20 or more employees (as opposed to 15 or more employees under Title VII).

does apply with full force to a person who supervises the same number of workers in a company employing twenty or more.

*Birkbeck,* 30 F.3d at 510. The provision applying the ADEA to "agents," the Court continued, is only an "unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer." *Id.* Several other circuits have reached the same conclusion as *Birkbeck.* *E.g., Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Smith v. St. Bernards Medical Ctr.,* 19 F.3d 1254, 1255 (8th Cir.1994); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991).

The Court believes that the logic of *Birkbeck* should apply with equal force to Title VII claims. It defies reason to suggest that Title VII protects small businessmen from liability, but does not protect individuals— who in most instances will be less able than the small business owner to provide financial compensation to the person wronged. Extending the rationale of *Birkbeck* to Title VII is hardly a major leap. The definitions in both statutes are virtually identical. Perhaps more important, the two statutes are designed with the same purpose: to prohibit discrimination in employment. And it is not uncommon for courts to analyze the two statutes in a similar fashion. The Supreme Court has frequently done so in assessing theories of liability for discrimination and in assessing the burdens of proof. *See, e.g., Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993) (discussing disparate treatment theory, common in Title VII cases, in an ADEA case); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 119–21, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) (discussing *McDonnell Douglas* framework, used to allocate burdens of proof in Title VII cases, in an ADEA case).

This is not to say that an individual will never qualify as an "employer" under Title VII. The Fourth Circuit has held that an individual is an "employer" under Title VII if he or she "serves in a supervisory position and exercises significant control over [complainant's] hiring, firing, or conditions of employment." *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989). In *Paroline,* the individual defendant, a person in a supervisory position, was held liable under Title VII for sexually harassing an underling. *Birkbeck* narrowed *Paroline,* however, by stating that its conclusion that individuals were not liable under the ADEA did not shield an employer's agent in all circumstances, but only in instances involving "personnel decisions of a plainly delegable character." *Birkbeck,* 30 F.3d at 510 n. 1.[4]

Notwithstanding *Birkbeck,* Plaintiff urges this Court to adhere to the "plain language" rule. Citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), plaintiff argues that the term "agent" in the definition of "employer" is dispositive of the point. In *Ron Pair,* the Supreme Court stated a familiar rule of statutory construction:

> [t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.

*Ron Pair,* 489 U.S. at 242, 109 S.Ct. at 1031.

Were we looking at the definition of "employer" in Title VII in isolation, plaintiff's argument might have merit. But the definition does not stand in isolation; it is part of a larger whole. It is the *statute* the Court must interpret, not a singular definition contained within the statute. The Supreme Court's counsel in *Ron Pair* thus demonstrates precisely why plaintiff's argument must fail. Here, "literal application" of the statute urged by plaintiff will impose liability against individual defendants, a result at odds with the broader statutory scheme con-

---

4. The meaning of this brief footnote is not immediately apparent. The *Birkbeck* court did not elaborate on the point. This court interprets the footnote to mean that decisions that any employee in a supervisory position might make, i.e., hiring, firing, or discipline, may be delegated within the corporation and thus shield an individual from liability under employment discrimination laws. By contrast, *Birkbeck* implies, correctly, that sexual harassment is not "plainly delegable," and thus individual liability can apply in such cases.

tained in Title VII. Such a result cannot have been intended by a Congress which took care to assure that small business owners were shielded from the reach of the law.

Finally, Plaintiff argues that the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1072 (1991), which permits compensatory and punitive damages in Title VII, created "viable remedies against individual conduct in violation of antidiscrimination statutes." Pl.Br. at 3.[5] Plaintiff's apparent contention is that because such damages are remedies typically obtainable from individuals, Congress must have intended to apply Title VII to individual defendants.

Although *Birkbeck* did not reach this point, the reasoning that must be applied here is the same. The Civil Rights Act of 1991 places limits on damages, and contains a sliding scale of caps which *applies only to companies*. 42 U.S.C.S. § 1981a(b)(3) (1989 & Supp.1995). Congress' failure to include individuals within this limitation suggests strongly that it did not consider individuals liable. As with the Fourth Circuit's conclusion in *Birkbeck* that it would be illogical to apply the employment discrimination laws to individuals when small business is exempt, so, too it would be illogical to assume that liability under these laws is capped for corporate America but not for individual defendants. *Accord, EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir.1995). To buttress her claim that the Civil Rights Act of 1991 intended to provide for individual liability, Plaintiff notes that a House report on the 1991 Civil Rights Act cited approvingly to a District Court case where corporate employees were held liable. Pl.Br. at 3–4 (citing H.R. Rep. 40(I), 102d Cong., 1st Sess. 67 (1991), U.S.Code Cong. & Admin.News 1991, p. 549 and *Zabkowicz v. West Bend Co.*, 589 F.Supp. 780, 785 (E.D.Wis.1984), *aff'd in part, rev'd in part on other grounds*, 789 F.2d 540 (7th Cir.1986)). But Plaintiff wholly misreads the section of the House report she cites; there, the House committee was elaborating on the need for compensatory and punitive damages in em-

ployment discrimination cases, *not* the need to ensure that the statutes reach individual defendants. Moreover, the case cited in the House report would seem to provide Plaintiff little solace: it was a sexual harassment case, which, under the footnote in *Birkbeck*, is one of the few instances where individual liability will be imposed in employment discrimination cases in the Fourth Circuit.

Accordingly, for the foregoing reasons, Defendant Smith is DISMISSED. As stated *supra* at 3, Plaintiff's ADA claim against RJK, Count II of the complaint, is DISMISSED. Plaintiff's case against RJK under Title VII (Count I of the complaint), not contested in these 12(b)(6) motions, continues.

The Clerk of the Court is **DIRECTED** to forward copies of this order to counsel for the parties.

**IT IS SO ORDERED.**

---

**5.** The Civil Rights Act of 1991 expanded recovery in Title VII cases, which had been limited to back pay and equitable relief, to include compensatory and punitive damages. 42 U.S.C.S. § 1981a (1989 & Supp.1995).