Deborah BLANKENSHIP, Plaintiff,

v.

WARREN COUNTY, VIRGINIA,
et al.,[1] Defendants.

Civil Action No. 95–00062–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

March 19, 1996.

See publication Words and Phrases
for other judicial constructions and def-
initions.

1. On October 3, 1995, the parties voluntarily dismissed the defendant Warren County, Virginia.

Michael T. Leibig, Carla Markim Siegel, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., Fairfax, VA, for Deborah Blankenship.

James J. Kelley, Morgan, Lewis & Bockius, Washington, DC, for Warren County, Virginia.

John Mills Barr, James J. Kelley, Morgan, Lewis & Bockius, Washington, DC, for Warren County Sheriff's Department and Lynn Armentrout.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes before the court upon the defendants' objections to a Report and Recommendation issued by the Honorable B. Waugh Crigler, Magistrate Judge, United States District Court for the Western District of Virginia, on December 6, 1995.[2] In this civil action, the plaintiff alleges that she was discharged from her position as a deputy sheriff with the defendant Sheriff's Department on the basis of gender, in violation of Title VII of the so-called Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* (1996), and in violation of her rights as secured by the so-called Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, U.S. Const. amend. XIV; 42 U.S.C. §§ 1981(a) & 1983 (1996). The defendants move to dismiss or in the alternative for summary judgment on the following grounds: (1) that the Sheriff of Warren County is not individually liable in an action prosecuted pursuant to Title VII based upon a claim of gender discrimination; (2) that the Sheriff and Sheriff's Department are entitled to immunity pursuant to the Eleventh Amendment to the Constitution of the United States; and (3) that the Sheriff and Sheriff's Department are entitled to a defense of qualified immunity. The Magistrate Judge recommends that this court overrule the defendants' motion in its entirety. For the reasons stated below, the court will adopt the Report of the Magistrate Judge inasmuch as it recommends overruling the defendant Sheriff's motion to dismiss Count II against the Sheriff in his individual capacity, but will decline to adopt the remaining recommendations.

### I.

The facts relevant to this matter are simple. On December 16, 1986, the plaintiff, Deborah Blankenship, was hired by the Defendant Sheriff Lynn Armentrout ("Sheriff") to work as a deputy dispatcher in the defendant Warren County Sheriff's Department ("Sheriff's Department"). On January 1, 1991, the Sheriff promoted the plaintiff to the position of "Road Deputy."

The defendants claim that during February 1993, the defendant Sheriff's Department received three citizen complaints regarding the plaintiff's verbally abusive language while on duty. As a result of the complaints, the Sheriff's Department placed the plaintiff on probation for a period of one year.

On June 13, 1993, the plaintiff instituted a high speed pursuit of a car which the plaintiff had detected traveling at a speed approximately twenty miles per hour in excess of the posted speed limit. The plaintiff allegedly lost sight of the targeted vehicle and terminated the pursuit. However, at some point later the plaintiff resumed the pursuit, increased her speed, and was involved in a single-car accident. The defendants allege that the plaintiff destroyed the police vehicle. The defendants claim also that the June 13, 1993 accident was the plaintiff's sixth vehicular accident in her two-year period as a Road Deputy.

The Sheriff directed Captain Billy Chapman, Chief Deputy of the Sheriff's Department, to conduct an investigation of the

---

2. By Standing Order dated June 26, 1992, this court referred all civil actions to the United States Magistrate Judge for appropriate pre-trial matters and for conclusions of fact and recommendations for the disposition of dispositive matters, pursuant to 28 U.S.C. §§ 636(b)(1)(A) & (B).

plaintiff's June 13, 1993 accident. Captain Chapman concluded that the plaintiff violated several provisions of the Sheriff's Department's General Order 89–20. Accordingly, Captain Chapman recommended that the plaintiff be terminated.

The Sheriff met with Douglas Napier, County Attorney for Warren County, Virginia. Mr. Napier, in turn, consulted with the Office of the Attorney General for the Commonwealth of Virginia. Mr. Napier informed the Sheriff that there would be nothing improper in terminating the plaintiff. On July 22, 1993, the Sheriff and others met with the plaintiff. On or about July 22, 1993, the Sheriff terminated the plaintiff.

On August 17, 1993, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging gender discrimination in her termination and naming only the Sheriff's Department. The plaintiff claims that she, the first and only female Road Deputy during her tenure, endured comments and slurs based upon her gender; that she was reprimanded for her physical limitations as a female; and that she was terminated because of her gender. The plaintiff sought a so-called "Right to Sue" letter from the EEOC. On July 26, 1995, the plaintiff initiated this civil action.

## II.

### Title VII Individual Liability

■ The Magistrate Judge concluded that the defendant Sheriff is subject to liability in his individual capacity. The Magistrate Judge, relying upon *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir.1989), *vacated on other grounds*, 900 F.2d 27 (4th Cir.1990), held that the extant law of the Fourth Circuit is that an individual qualifies as an employer under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, and conditions of employment, and that there is no person in the Commonwealth that satisfies that definition better than a Sheriff. The defendant Sheriff argues that Title VII

does not operate to extend liability to individuals in cases involving gender discrimination. The court agrees with the Sheriff.

Section 2000e(b) of the Civil Rights Act, in relevant part, defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ., and any agent of such a person." In *Paroline,* the court held that summary judgment was improper on the issue of individual liability in a case alleging sexual harassment where the plaintiff raised a genuine issue of material fact as to whether a supervisor exercised sufficient supervisory authority over the plaintiff. *Paroline,* 879 F.2d at 104. However, in *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510–11 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994), the court held that the provision defining "employer" pursuant to the so-called Age Discrimination in Employment Act ("ADEA") operates to limit civil liability to an employer and does not extend liability to an individual.[3] The *Birkbeck* court, noting the close statutory kinship between the ADEA and Title VII, reasoned that "it would be incongruous to hold that the ADEA does not apply to the owner of a business employing, for example, ten people, but that it does apply with full force to a person who supervises the same number of workers in a company employing twenty or more." *Id.* at 510 (citation omitted). The *Birkbeck* court concluded that the provision's language incorporating an "agent" of an employer into the definition of "employer" was "an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for an employer." *Id.* (citation omitted). It is noteworthy that the *Birkbeck* court was careful to caution that an employee-agent "may not be shielded as an employer's agent in all circumstances" and specifically referred to "personal liability under Title VII in a sexual harassment setting." *Id.* at 510 n. 1 (citing *Paroline,* 879 F.2d at 104).

---

**3.** The ADEA defines "employer" as "a person engaged in any industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the correct or preceding calendar year. . . . The term also means (1) any agent of such a person. . . ." 29 U.S.C. § 630(b) (1996).

Since *Birkbeck*, the district courts within the Fourth Circuit have grappled with the task of reconciling the *Birkbeck* decision with the decision in *Paroline*. In *Lane v. David P. Jacobson & Co., Ltd.*, 880 F.Supp. 1091, 1095–96 (E.D.Va.1995), the court reasoned that "the clear implication of the decision in *Birkbeck* was that the Fourth Circuit does not support individual liability for agents of employers under Title VII" and, accordingly, refused to extend individual liability to a supervisor in a case alleging a violation of Title VII based upon a claim of sexual harassment. In *Mitchell v. RJK of Gloucester, Inc.*, 899 F.Supp. 246 (E.D.Va.1995), the court relied upon the *Birkbeck* decision in refusing to extend individual liability to a supervisor of the defendant employer in a case alleging a violation of Title VII based upon a claim of racial discrimination. In *Mitchell*, the court, acknowledging the footnote in *Birkbeck*, noted that a sexual harassment case "is one of the few instances where individual liability will be imposed in employment discrimination cases in the Fourth Circuit." *Id.* at 249. Finally, in *Frye v. Virginia Transformer Corp.*, Civil Action No. 95–0399–R, 1995 WL 810018, at *2 (W.D.Va. Nov. 29, 1995), Chief Judge Jackson Kiser acknowledged the distinction between Title VII cases based upon claims of sexual harassment and Title VII cases based upon other claims:

> *Birkbeck* is inapposite to the instance case. An age discrimination decision, it makes specific reference to the *Paroline* analysis, thereby providing a distinction between the relatively benign age discrimination and more egregious sexual harassment. *Paroline* holds that individual Title VII liability arises where sexual harassment is conducted by the supervisor for his own benefit and not for that of his employer. I therefore conclude that [ ] allegations of sexual harassment ... do not come within the rationale of the solicitude expressed in *Birkbeck* for small business and, *a fortiori*, for individual supervisors.

*Id.* (internal citation omitted).

■ This court will now enter the fray by refusing to extend individual liability in a Title VII claim based upon an allegation of gender discrimination. This court believes that claims in the gender discrimination setting are more akin to claims in the age discrimination setting. In both age discrimination and gender discrimination cases, the allegation is focused upon the actions of the employer, or of the employer's agent, in conducting its business. In other words, if an employee-agent of the employer acts with race-based or gender-based animus in conducting the business of the employer (i.e., taking disciplinary actions against or terminating an employee), then the employee-agent is acting for the primary benefit of the employer. By contrast, in a sexual harassment case, it is generally more common for the employee-agent to act for his own benefit and personal satisfaction. In the instant matter, the plaintiff claims that she was placed on probation and was ultimately terminated as a result of the Sheriff's impermissible gender-based animus. Accordingly, where a plaintiff prosecutes a claim alleging a violation of Title VII based upon a claim of gender discrimination and where such claim clearly sets forth that the supervisory employee was acting pursuant to the benefit and interest of the employer, then individual liability does not extend to the supervisory employee. The court will dismiss Count I of the complaint against the Sheriff in his individual capacity.

### Eleventh Amendment Immunity

■ In his Report, the Magistrate Judge recommends that this court not extend Eleventh Amendment immunity to the Sheriff or to the Sheriff's Department. The Magistrate Judge concludes that the Sheriff is not an agent of the Commonwealth of Virginia because the Sheriff occupies a constitutionally-created independent office. The court declines to adopt the Magistrate Judge's Recommendation and concludes that the Sheriff and the Sheriff's Department are entitled to immunity pursuant to the Eleventh Amendment to the Constitution of the United States.

It is true that the office of Sheriff is an independent office created pursuant to Article VII § 4 of the Virginia Constitution. *See Jenkins v. Weatherholtz*, 909 F.2d 105, 107

(4th Cir.1990); *Olivo v. Mapp,* 838 F.Supp. 259, 261 (E.D.Va.1993). In *Gray v. Laws,* 51 F.3d 426, 437 (4th Cir.1995), the court noted that "[a] state's characterization of a governmental entity under state law ... is at least a subsidiary factor in the Eleventh Amendment inquiry.... however, the Eleventh Amendment question ordinarily is not resolved by resort to this subsidiary consideration...." In the instant case, therefore, the fact that the Sheriff occupies a constitutionally-created independent office is not dispositive of the Eleventh Amendment inquiry. Courts have concluded that Eleventh Amendment immunity attaches to other constitutionally-created independent entities in Virginia's governmental structure. *See Hicks v. Phipps,* 765 F.Supp. 1541, 1544 (W.D.Va. 1990) (holding that an action against a county Commissioner of Revenue in his official capacity was "in effect one against the Commonwealth of Virginia").[4]

In *McCoy v. Chesapeake Correctional Center,* 788 F.Supp. 890 (E.D.Va.1992), the court enumerated several factors that courts should consider in determining whether an entity is a state actor:

> [W]hether and to what extent any judgment will be payable from the state treasury; [2] the extent of funding provided to the institution by the state; [3] the extent of the state's control in appointing the governing body of the institution; [4] the degree of the institution's autonomy over its operations; [5] whether the institution is separately incorporated; [6] whether it has the power to sue and be sued and to enter into contracts; [7] whether its property is immune from state taxation; and [8] whether the institution's function is governmental or proprietary.

*Id.* at 892 (quoting *Artist v. Virginia Inter. Terminals, Inc.,* 679 F.Supp. 587, 592 (E.D.Va.1988) (quoting *Jacobs v. College of William & Mary,* 495 F.Supp. 183, 189 (E.D.Va.1980), *aff'd,* 661 F.2d 922 (4th Cir.), *cert. denied,* 454 U.S. 1033, 102 S.Ct. 572, 70 L.Ed.2d 477 (1981))).

In the instant case, any judgment received by the plaintiff will, with all reasonable probability, be paid out of the Virginia State Division of Risk Management Insurance Plan. *See* Va.Code Ann. § 2.1–526.8:1 (1995). In *Bockes v. Fields,* 999 F.2d 788, 790–91 (4th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 922, 127 L.Ed.2d 216 (1994), the court held that a local board and a department of social services were agencies immune pursuant to the Eleventh Amendment because any liability incurred would be covered by insurance for which Virginia paid eighty percent (80%) of the premium. *See also McCoy,* 788 F.Supp. at 893 (noting that the Risk Management Plan "clearly indicates ... that the State of Virginia has assumed significant financial responsibility for suits that are in reality suits against local jails"). In this case, the defendants point out that Virginia determines whether the Sheriff will participate in the plan and that Virginia pays 100% of the premium. The State of Virginia provides approximately 80% of the Sheriff's annual operating budget. The State Compensation Board is responsible for setting salaries for deputies and approves the number of deputies authorized to be employed by the Sheriff. *See* Va.Code Ann. § 14.1–70 (Michie 1995). The State mandates the training, certification and uniform requirements of deputies. *See* Va.Code Ann. §§ 14.1–73.2; 9–170(35); 15.1–90.3 (Michie 1995). Finally, and significant to this court, the Sheriff and the Sheriff's Department fulfill a classic governmental function—the execution and enforcement of the law. There can be no credible claim that the Sheriff fulfills a proprietary function.

In summary, the court concludes that the Sheriff and the Sheriff's Department are arms of the Commonwealth of Virginia and that they, therefore, are entitled to invoke the defense of immunity from suit pursuant to the Eleventh Amendment. Consequently, the court will dismiss Count I alleging a violation of Title VII on the ground of gender

---

4. The Virginia Constitution creates five state officers which are charged with performing quintessential functions of state government: Commonwealth's Attorney, Treasurer, Commissioner of Revenue, Sheriff, and Clerk of the Court. The court believes that it would be the incredible argument indeed that these officers are not state actors and are therefore not entitled to immunity pursuant to the Eleventh Amendment.

discrimination against the Sheriff's Department and the Sheriff in his official capacity and will dismiss Count II alleging a violation of the plaintiff's equal protection rights against the Sheriff's Department and the Sheriff in his official capacity.

■ However, the Eleventh Amendment does not provide the Sheriff with a defense to the § 1983 claim against the Sheriff in his individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 30–31, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." (citation omitted)). In *Beardsley v. Webb*, 30 F.3d 524, 531 (4th Cir.1994), the court declined to extend Eleventh Amendment immunity protection to an officer in a sheriff's office where the claim was brought against the officer in his individual capacity. Consequently, the defendants' motion to dismiss the § 1983 action against the Sheriff in his individual capacity on Eleventh Amendment immunity grounds will be overruled.

### Qualified Immunity

■ In his Report, the Magistrate Judge recommends that this court overrule the defendant Sheriff's motion to dismiss on the ground of qualified immunity. The Magistrate Judge concluded that the defense of qualified immunity was unavailable to a public official in a case involving employment decisions because, unlike in cases involving questions of unreasonable arrest or excessive force, the question of motive is integrally determinative to a claim of impermissible gender-based animus. The court agrees with the Magistrate Judge.

■ The doctrine of qualified immunity shields officials who perform discretionary functions "from civil liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In essence, the *Harlow* Court held that "the public official's state of mind was generally no longer relevant in deciding a claim of qualified immunity."

*Tompkins v. Vickers*, 26 F.3d 603, 607 (5th Cir.1994). "The Court sought to protect public officials from the costs that attend '[j]udicial inquiry into subjective motivation' by affording not only immunity from liability, but also immunity from suit." *Id.* (quoting *Harlow*, 457 U.S. at 817, 102 S.Ct. at 2737). "Under *Harlow*, therefore, the focus of an inquiry into a defendant's qualified immunity is ordinarily the 'objective reasonableness' of the official's discretionary conduct as measured by reference to clearly established law." *Id.*

However, as noted by the *Tompkins* court, "in *Harlow*, the public official's state of mind was not an essential element of the underlying constitutional violation." *Id.* The *Tompkins* court observed that "[e]very circuit that has considered the question has concluded that a public official's motive or intent must be considered in the qualified immunity analysis where unlawful motivation or intent is a critical element of the alleged constitutional violation." *Id.* (citing *Branch v. Tunnell*, 937 F.2d 1382 (9th Cir.1991), *cert. denied*, —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *Siegert v. Gilley*, 895 F.2d 797 (D.C.Cir.1990), *aff'd on other grounds*, 500 U.S. 226, 235, 111 S.Ct. 1789, 1795, 114 L.Ed.2d 277 (1991); *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 648 (10th Cir.1988); *Poe v. Haydon*, 853 F.2d 418 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989); *Gutierrez v. Municipal Ct. of Southeast Judicial Dist.*, 838 F.2d 1031 (9th Cir.1988), *vacated as moot*, 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989); *Musso v. Hourigan*, 836 F.2d 736 (2d Cir.1988)). The instant civil action alleges that the Sheriff impermissibly terminated the plaintiff based upon gender-based animus, and consideration of the Sheriff's subjective motivation is an integral component to the plaintiff's claim. The Sheriff is not entitled to a dismissal based upon the defense of qualified immunity at this stage in the proceeding.

■ However, the *Tompkins* decision does not operate necessarily to bar the defense of qualified immunity from public officials where the claim involves a determination of

subjective motivation. *See Tompkins,* 26 F.3d at 608 ("We agree that a public official's qualified immunity defense should not be defeated simply because the plaintiff alleges a claim that hinges on the requisite state of mind of the public official.") In the instant matter, the Magistrate Judge stated that the issue of qualified immunity could not be resolved until full discovery has occurred. The court believes that where the substantive claim requires inquiry into the subjective motivation of the public official, then a defense on the ground of qualified immunity is best decided on a motion for summary judgment after full discovery has been completed. "If a rule of law crafted to carry out the promise of *Harlow* requires the plaintiff to produce some evidence, and the plaintiff fails to do so, then Rule 56(c) allows the court to grant the motion for summary judgment without ado." *Elliott v. Thomas,* 937 F.2d 338, 345 (7th Cir.1991), *cert. denied,* 502 U.S. 1121, 112 S.Ct. 1242, 117 L.Ed.2d 475 (1992). Accordingly, the court will overrule the defendant Sheriff's motion to dismiss the § 1983 claim against the Sheriff is his individual capacity on the ground of qualified immunity and will permit the Sheriff to renew the substance of his motion in a proceeding for summary judgment.

### III.

For the reasons set forth above, the court:

(1) will grant the defendant Sheriff's motion to dismiss Count I against the Sheriff in his individual capacity;

(2) will grant the defendants' motion to dismiss Count I against the Sheriff's Department and the Sheriff in his official capacity on the ground of Eleventh Amendment immunity;

(3) will grant the defendants' motion to dismiss Count II against the Sheriff's Department and the Sheriff in his official capacity on the ground of Eleventh Amendment immunity; and,

(4) will overrule the defendant Sheriff's motion to dismiss Count II against the Sheriff in his individual capacity.

An appropriate Order will this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

(1) That the "Report and Recommendation" of the United States Magistrate Judge issued on December 6, 1995, shall be, and it hereby is, adopted inasmuch as the Report recommends overruling the defendant Sheriff's motion to dismiss Count II against the Sheriff in his individual capacity.

(2) The court declines to adopt the remaining recommendations of the Magistrate Judge's Report.

(3) The defendant Sheriff's motion to dismiss Count I against the Sheriff in his individual capacity, shall be, and it hereby is, *GRANTED.*

(4) The defendants' motion to dismiss Count I against the Sheriff's Department and the Sheriff in his official capacity shall be, and it hereby is, *GRANTED.*

(5) The defendants' motion to dismiss Count II against the Sheriff's Department and the Sheriff in his official capacity shall be, and it hereby is, *GRANTED.*

(6) The defendant Sheriff's motion to dismiss Count II against the Sheriff in his individual capacity shall be, and it hereby is, *OVERRULED* with leave to renew.

The Clerk of the Court is hereby directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record and to the Honorable B. Waugh Crigler, Magistrate Judge, United States District Court for the Western District of Virginia.