Gerod **STUKES**, Plaintiff,

v.

**AETNA INSULATED WIRE COMPANY,**
**Howard Jackson and Sam Kimball,**
**Defendants.**

No. 2:96cv1247.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 16, 1997.

---

Luther D. Edmonds, Virginia Beach, VA, for Plaintiff.

Sharon Smith Goodwyn, James Phillip Naughton, Jeffrey Brian Hardie, Hunton & Williams, Norfolk, VA, Thomas G. Servodido, Duane, Morris & Heckscher, Philadelphia, PA, for Defendants.

## OPINION AND ORDER

MORGAN, District Judge.

This matter is before the Court on Defendants' Motions for Summary Judgment pursuant to Fed.R.Civ.P. 56, filed July 21, 1997. A hearing was conducted and the Court ruled from the bench on this matter on Friday, August 29, 1997. This opinion will further explain the rationale for the Court's ruling.

### FACTS

Gerod Stukes ("Stukes") was the employee of Aetna Insulated Wire Company ("Aetna") from July 18, 1989 until September 29, 1994 as an Armor Operator. Stukes alleges that he was constructively discharged, disparately disciplined and unlawfully denied promotion in violation of Title VII of the Civil Rights Act of 1964. Defendants deny that the alleged discrimination took place.

Stukes alleges that he expressed interest and applied for a promotion to an expediter/planner,[1] leadman or supervisory position on many occasions between 1992 and May 20, 1994. Stukes claims that his supervisors, Sam Kimball ("Kimball") and Howard Jackson ("Jackson"), discouraged Stukes from applying for these positions. Stukes asserts that he was qualified for those positions based on his one year of college education, three years of on-the-job experience and his work performance evaluations. Stukes claims that no position to which he aspired was ever posted, as was required by company policy, yet fourteen white individuals, who were no more qualified and/or had less work experience, were promoted to those same positions. On September 27, 1994, Stukes filed an EEOC charge alleging failure to promote only.

Plaintiff further asserts that he has faced intolerable working conditions in the form of an attitude from his supervisor, a requirement to work forced mandatory overtime,

---

1. These terms, expeditor and planner, are used by the parties interchangeably to refer to the same position.

and general stress which forced him to resign. However, plaintiff never consulted any medical profession in regard to his stress. Stukes finally asserts he was disciplined when other similarly situated white employees were not.[2] However, plaintiff admits he never specifically complained to Kimball that he was being discriminated against on the basis of his race and he never submitted a written complaint to anyone at Aetna asserting the same. On September 16, 1994, thirteen days before his resignation, Stukes procured employment with the Chesapeake Sheriff's Department at a greater salary than the salary he received while employed at Aetna.

Aetna determines promotions by considering each candidate's performance reviews, attendance record, attitude, mathematical skills and inventory control experience. First, Stukes has received several employee reviews which rate his performance in the following categories: quality of work, quantity of work, attitude, cooperation and attendance. Marks in each category range from unacceptable to outstanding. Stukes' post–1991 evaluations have given him overall ratings of "good" to "fair" when compared to his peers. Second, Stukes' two 1991 evaluations contained unacceptable marks for attendance. Third, Stukes has received three disciplinary warnings for failure to be at his assigned work area, sleeping on the job and working unauthorized overtime. Fourth, candidates for an expediter position must take a math and/or aptitude test. Stukes never took such a test. Fifth, Stukes claims he has inventory control experience from previous employment that was not considered.

Stukes admits he never even asked to be considered for an expediter or supervisory position until July 12, 1994. He made this request to be considered after the EEOC advised him he had no case because he had never applied for a position. Stukes asserts that whites had been requested to apply. Stukes further admits he began noticing that white employees were being promoted more rapidly as early as 1991.

On December 31, 1996, Stukes filed this Complaint. The Complaint alleges two counts asserted against Aetna, Willie Robinson, Howard Jackson and Sam Kimball. Count 1 alleges Aetna's unlawful failure to promote Stukes and disparate discipline in violation of Title VII of the Civil Rights Act of 1964. Court two alleges unlawful discharge in violation of Title VII of the Civil Rights Act of 1994 based on alleged "intolerable working conditions" that forced Stukes to resign his position. Stukes seeks an injunction, a declaration that defendants violated Stukes' rights, compensatory damages for lost wages, salary and humiliation, mental anguish and inconvenience in the amount of $1,000,000 as well as punitive damages in the amount of $200,000, attorney's fees and costs. Stukes demanded a jury trial in this matter.

### Summary of Arguments

Defendants argue that individual defendants Jackson and Kimball must be dismissed from the case because the Fourth Circuit will not hold individuals who make decisions of a plainly delegable nature liable under Title VII.[3] Defendants further assert

---

2. There is a dispute as to whether he was unfairly disciplined or whether it was someone else, but because disparate discipline was never raised in the EEOC charge, this Court does not have jurisdiction over the claim.

3. According to the Fourth Circuit, individual defendants may be liable for Title VII violations in very limited circumstances. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 & n. 1 (4th Cir.), cert. den. 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994). In Birkbeck, the Fourth Circuit held that individuals who are alleged to have made "personnel decisions of a plainly delegable character" are not proper defendants under the Age Discrimination in Employment Act ("ADEA"). This same reasoning has been consistently applied to Title VII cases. See Michael v. Sentara Health Sys., 939 F.Supp. 1220, 1226 (E.D.Va.1996); Stephens v. Kay Management Co., 907 F.Supp. 169, 172–74 (E.D.Va.1995); Mitchell v. RJK of Gloucester, Inc., 899 F.Supp. 246 (E.D.Va.1995).

Decisions of a plainly delegable nature include decisions to terminate an individual's employment and to hire, discipline or promote an employee. See White v. CMA Constr. Co., 947 F.Supp. 231, 235 (E.D.Va.1996); Mitchell, 899 F.Supp. at 248 & n. 4; Michael, 939 F.Supp. at 1226–27. Since any decisions made by Kimball or Jackson would be decisions on promotions constituting "personnel decisions of a plainly delegable nature," Kimball and Jackson are not individually liable under Title VII. Therefore, Kimball and Jackson are not amenable to suit in this case.

that eight of the sixteen alleged discriminatory promotions cannot be considered by this Court because Stukes' EEOC charge was filed more than 300 days after their occurrence. Likewise, three counts of discriminatory promotion occurred after plaintiff had resigned. Plaintiff argues that these incidents are all admissible under the continuing violations theory which revives stale claims when plaintiff fails to perceive the alleged discrimination prior to the statutory period for filing an EEOC charge. Plaintiff further argues that defendant should be estopped from raising a statute of limitations argument because Aetna failed to post notice of available job positions.[4]

Defendants claim this Court has no jurisdiction over a constructive discharge or disparate discharge claim as no EEOC charge regarding these allegations was filed. Defendants finally assert that plaintiff has not established a prima facie case of discrimination nor has plaintiff shown that defendant's non-discriminatory reasons for promotion were merely pretextual. Plaintiff asserts that the reasons given are pretextual.

### Standard of Review

District courts may enter summary judgment only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990) (en banc) *cert. den.*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The facts and inferences to be drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. *See Nguyen v.*

*CNA Corp.*, 44 F.3d 234, 237 (4th Cir.1995). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986).

In order to successfully defeat a motion for summary judgment, a plaintiff cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." *Doyle v. Sentry Insur.*, 877 F.Supp. 1002, 1005 (E.D.Va.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories or other evidence to show genuine issues for trial. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When plaintiff fails to make a sufficient showing establishing an essential element of their case and the plaintiff bears the burden of proof on that issue, "there is 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other fact immaterial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### Analysis

**A. Jurisdiction Over Constructive Discharge and Disparate Discipline Claims**

It is well settled that a Title VII plaintiff cannot file a civil action that raises

---

4. It is unnecessary for the Court to resolve this issue as the Court is dismissing the disparate treatment claim on the merits. However, the Court notes that in Virginia, a complainant has 300 days in which to file a charge with the EEOC from the date of the discriminatory conduct. *See Holland v. First Virginia Banks, Inc.*, 744 F.Supp. 722, 725 (E.D.Va.1990). This filing requirement is not jurisdictional, but is akin to a statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982), *reh'g den.* 456 U.S. 940, 102 S.Ct. 2001, 72 L.Ed.2d 461 (1982); *Long v. Ringling Bros. and Barnum & Bailey*, 9 F.3d 340, 342 (4th Cir.1993). Eight of the sixteen promotions that Stukes claims were discriminatory occurred prior to December 2, 1993 (i.e., 300 days prior to the September 27, 1997 EEOC charge). Further, the continuing violation doctrine does not apply in this case as plaintiff testified that he recognized what he felt was a pattern of race discrimination occurring at Aetna as early as 1991. (Stukes Tr. 117, 120–22; Jackson Aff. ¶9). Because plaintiff is unable to establish the necessary third element of the *Berry v. Board of Sup'rs of L.S.U.*, 715 F.2d 971 (5th Cir.1983) test as adopted by this Court in *Williams v. Enterprise Leasing of Norfolk/Richmond*, 911 F.Supp. 988, 996 (E.D.Va.1995), the eight alleged discriminatory promotions occurring prior to December 2, 1993 cannot be considered by this Court.

Further, three of the alleged discriminatory hirings occurred after Stukes resigned from Aetna. Therefore, failure to consider Stukes for these positions cannot be discriminatory. For this reason, these claims will not be considered by this Court.

allegations that are beyond the scope of his EEOC charge. *See Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744 (E.D.Va.1991). "[O]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996).

A disparate discipline charge is different then a charge of disparate treatment.[5] The EEOC charge and affidavit[6] in this case included allegations of disparate treatment for failure to promote only. There were no allegations of disparate discipline or constructive discharge. This Court has previously held that "allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges, as surely would an initial failure to file a timely EEOC charge." *See Doyle v. Sentry Insur.,* 877 F.Supp. 1002, 1007 (E.D.Va.1995) (quoting *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 127 (7th Cir.1989)). Therefore, because no previous EEOC charge was brought, the Court **GRANTS** the defendant's Motion for Summary Judgment as to plaintiff's disparate discipline and constructive discharge claims.

## B. Disparate Treatment Claim

A claim of failure to promote based on race is a disparate treatment claim under Title VII. *See Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 959 (4th Cir.1996). In order to prevail on such a claim, the plaintiff must utilize the well established *McDonnell–Douglas* burden shifting scheme. *See id.* Under the three-step *McDonnell–Douglas* framework, the plaintiff-employee must first make out a prima facie case of discrimination. *See id.* If he succeeds at establishing a prima facie case, the defendant employer has an opportunity to present legitimate, non-discriminatory reasons for its employment action. *See id.* A defendant can rebut a prima facie case by showing that the person promoted was better qualified for the job than the plaintiff. *See Amirmokri v. Baltimore Gas & Elec. Co.,* 60 F.3d 1126, 1129 (4th Cir.1995); *see also Patterson v. McLean Credit Union,* 491 U.S. 164, 186–87, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989). If the employer successfully articulates one or more such reasons, the presumption of unlawful discrimination "drops out of the picture" and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *Ennis v. National Ass'n of Bus. & Educ. Radio,* 53 F.3d 55, 57–58 (4th Cir.1995). In order to establish such a pretext, the plaintiff must show he was more qualified than the employee selected or that his race was a greater reason for the failure to promote. *See Evans,* 80 F.3d at 960 (discussing plaintiff's burden in the context of a sexual harassment charge).

Assuming that plaintiff established his prima facie case,[7] defendants have articu-

---

5. For disparate treatment, plaintiff must establish a prima facie case that "(1) [he] is a member of a protected group; (2)[he] applied for the position in question; (3)[he] was qualified for the position; and (4)[he] was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994); *McNairn v. Sullivan,* 929 F.2d 974, 977 (4th Cir.1991). Disparate discipline, on the other hand, requires "(1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees out side [sic] the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." *Wilson v. Circuit City Stores, Inc.,* 81 F.3d 153 (4th Cir.1996) (unpublished decision) (quoting *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1990)).

6. The plaintiff complained of the Court's sua sponte request for and review of the affidavit, since neither party included this document in their submissions relative to the motion. However, the Court examined the affidavit to determine whether it expanded upon the EEOC charge thus enabling the plaintiff to claim disparate discipline or constructive discharge. The affidavit does not expand upon the EEOC charge or contain any information from which the existence of a disparate discipline or constructive discharge claim could be inferred.

7. Defendant argues that no prima facie case was established as Stukes never applied for a leadman or supervisory position and did not apply for an expediter/planner position until July 12, 1994. None of Stukes alleged discriminatory promotions to an expediter/planner position occurred after July 12, 1994. However, Aetna admittedly did not post notices of any position

lated legitimate, non-discriminatory reasons for not promoting Stukes. First, Stukes, who was rated overall as a "good" to "fair" employee when compared to his peers, had consistently weaker overall performance ratings than those employees who were promoted. Second, between 1990 and 1993, Stukes received three "unacceptable" marks for attendance. No promoted employee received such a mark. Third, Stukes received multiple disciplinary notices. Fourth, Stukes received a score of 40 out of 100 on a math test that defendants claim is substantially similar to the math test required to be taken by applicants for the expediter/planner position.[8]

In response, plaintiff merely asserts that Aetna's reasons are pretextual. "[U]nsubstantiated allegations and bald assertions concerning [plaintiff's] own qualifications and the shortcomings of ... co-workers fail to disprove [a company's] explanation or show discrimination." *See Evans,* 80 F.3d at 960. Plaintiff has submitted no evidence to rebut defendant's submissions in support of its non-discriminatory reason that the employees who were promoted were more qualified than plaintiff. For this reason, this Court **FINDS** that plaintiff has failed to meet his burden of producing evidence that defendants' reasons were pretextual.

As to the disparate discipline and constructive discharge claims, plaintiff failed to file an initial charge with the EEOC in regard to these claims. Therefore, Defendant's Motion for Summary Judgment in regard to these claims is **GRANTED.** As to the disparate treatment claim, defendants have presented evidence in support of their non-discriminatory reasons to promote other workers. Plaintiff has failed to produce evidence that these reasons are pretextual. Therefore, Defendant's Motion for Summary Judgment in regard to the claim of disparate treatment is **GRANTED.**

The Clerk is **REQUESTED** to send copies of this order to all counsel of record.

It is so **ORDERED.**

---

openings. Further, it is alleged that Kimball and Jackson discouraged Stukes from applying for any of these positions when he expressed interest to them. Therefore, it is arguable that a prima facie case could have been established using an equitable estoppel theory.

8. Defendants further assert that Stukes has no inventory control experience, as is required.

Plaintiff asserts that he has inventory control experience through prior employment that was not considered by the defendants in making the promotional decisions. Regardless of this disagreement, this Court finds that Aetna has presented sufficient, legitimate, non-discriminatory reasons for not promoting Stukes.