OPINION
 

 REBECCA BEACH SMITH, District Judge.
 

 These two cases involve employment disputes brought by nurses formerly employed by Defendant Sentara Norfolk General Hospital (“Sentara”) and under the supervision of Sentara’s employee Defendant Maty Schwarga. They are before the Court on Defendants’ Motion to Dismiss, which was converted by the Court into a Motion for Summary Judgment.
 

 I. Factual and Procedural History
 

 Plaintiffs Deborah Michael and Nancy Benson were both nurses working for Sentara in the Labor and Delivery unit. They each claim they were discharged by Sentara after their religious, moral, and personal objections to assisting in late term abortions went unaccommodated. Both claim that they informed Sentara of their objections to assisting in such procedures, but the hospital scheduled them to care for abortion patients in disregard of their religious objections. Benson was ultimately suspended and discharged by Sentara because of her conduct with an abortion patient.
 
 [1]
 
 Sentara terminat
 
 *1223
 
 ed Michael for absenteeism. Both Plaintiffs assert their conduct was caused by their objections to performing abortions and Sentara’s refusal to accommodate their religious beliefs.
 

 Plaintiffs’ original Motions for Judgment were filed in state court on March 1, 1996, against Sentara Norfolk General Hospital and Schwarga. Both eases were removed to this Court on March 26, 1996. Plaintiffs filed Motions to Remand which were denied by Order dated May 21,1996.
 

 The removed Complaints each asserted eight (8) causes of action arising out of Plaintiffs’ alleged treatment by Defendants Sentara and Schwarga. Count I is a civil rights claim under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e
 
 et seq.
 

 [2]
 

 Counts II and VII are state law claims alleging wrongful termination of Plaintiffs’ employment in violation of the public policy of Virginia established in the Virginia Human Rights Act, Va.Code Ann. § 2.1-715 (Michie 1995), Virginia’s statutory regulation of second and third trimester abortions, Va.Code Ann. § 18.2-74, 74.1 (Michie 1996), and the Virginia abortion “Conscience Clause,” Va.Code Ann. § 18.2-75 (Michie 1996). Counts III and IV allege intentional and negligent infliction of emotional distress, respectively. Counts V, VI, and VIII allege various breaches by Sentara of express and implied provisions of purported employment contracts.
 

 Defendants filed an Answer and a Motion to Dismiss pursuant to Rule 12(b)(6) on March 26, 1996. Parts of the Motion to Dismiss were supported by documentary evidence, necessitating consideration of the Motion as one for Summary Judgment.
 
 See
 
 Fed.R.Civ.P. 12(b) (If “matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.”). On May 31, 1996, Plaintiffs filed an objection to the Court’s conversion of Defendants’ 12(b)(6) Motion into a Motion for Summary Judgment. In the alternative, Plaintiffs asked the Court to defer conversion until they had adequate time for discovery, claiming it was necessary to defend the Motion for Summary Judgment. On June 4,1996, Plaintiffs filed a Brief in Opposition to Defendants’ Motion to Dismiss, along with an affidavit of their attorney describing the need for additional discovery. Defendants filed their Reply on June 11, 1996 for Plaintiff Michael, and on June 12,1996 for Plaintiff Benson. The matter was set for oral argument on July 2,1996.
 

 At the July 2 hearing, the Court granted Plaintiffs leave to file Amended Complaints, in part to correct deficiencies in the pleading of their emotional distress claims. The Court also ordered Sentara to comply with certain discovery requests, and ordered partial depositions of Schwarga and Joy McDonald, the Human Resource Consultant at Sentara. So that Plaintiffs could properly address the issues raised by Defendants’ Motion, the Court gave Plaintiffs until July 12, 1996, to complete the ordered depositions and until July 16, 1996, to supplement their opposition to Defendants’ Motion with affidavits, deposition transcripts, or other discovery responses. The Court was particularly concerned with allegations relating to the date of each Plaintiffs’ termination, as Sentara asserted the wrongful discharge claims were barred by the one-year statute of limitations. The Court also permitted discovery on the issue of Schwarga’s motivation for the dismissals, in order to assess her amenability to suit under Title VII.
 

 On July 16, 1996, Plaintiffs each filed an Amended Complaint and a Motion for Leave to File a Supplemental Brief in Opposition to the Defendants’ Motion for Summary Judgment. In the Amended Complaints, Plaintiffs added Sentara Health System (“Sentara Health”) as a Defendant. In the Motion, Plaintiffs explained they wanted to wait to file the Supplemental Brief until af
 
 *1224
 
 ter more discovery was produced in order to more fully elucidate their arguments against summary judgment. Defendants filed a Supplemental Memorandum of Law in Support of Defendants’ Motion to Dismiss and in Opposition to Plaintiffs’ Motions for Leave to File a Supplemental Brief on July 23 and 24, for Plaintiffs Benson and Michael, respectively. In these Memorandums, Defendants argued that Plaintiffs failed to meet Court deadlines and that Defendants were entitled to dismissal with prejudice or summary judgment because Plaintiffs completely failed to address the Court’s concerns regarding Defendant Sehwarga’s individual liability under Title VII, and failed to create a material dispute regarding the date either Plaintiff was terminated. Defendants also argued that Michael’s emotional distress claims should be dismissed because she failed to include these in her Amended Complaint.
 

 At the hearing on the parties’ Motions to Compel, held on July 31, 1996, Plaintiffs claimed they still did not have enough discovery to respond adequately to Defendants’ Motion for Summary Judgment. The Court gave Plaintiffs an additional two weeks to finish discovery on the issues raised by Defendants’ Motion and to file a Supplemental Brief. On August 15, 1996, Plaintiffs filed a Brief in Opposition to Defendants’ Motion for Summary Judgment. Defendants filed their Reply on August 19,1996.
 

 Defendant Sentara Health, which was only recently included as a Defendant in each Plaintiffs’ Amended Complaint, filed a Motion to Dismiss on August 16, 1996, claiming it was not Plaintiffs’ employer. Plaintiffs filed a Response on August 27, 1996, opposing Sentara Health’s 12(b)(6) Motion.
 

 II. Standard of Review
 

 When deciding whether to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the factual allegations in the plaintiffs complaint must be accepted as true.
 
 Hishon v. King & Spalding,
 
 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A Rule 12(b)(6) motion should only be granted “if it appears beyond doubt that the plaintiff can prove no set of facts in support of his elaim which would entitle him to relief.”
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). When ruling on a Rule 12(b)(6) motion, a court should only consider the allegations in the pleadings, disregarding affidavits or other materials.
 
 Scheuer v. Rhodes,
 
 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). If “matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.” Fed. R.Civ.P. 12(b).
 

 Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);
 
 see, e.g., Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986);
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986);
 
 Terry’s Floor Fashions, Inc. v. Burlington Indus.,
 
 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial.
 
 Celotex Corp.,
 
 477 U.S. at 322-24, 106 S.Ct. at 2552-53. Such facts must be presented in the form of exhibits and sworn affidavits. “[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.”
 
 Id.
 
 at 322, 106 S.Ct. at 2552.
 

 III. Analysis
 

 A Local Rule 10(F)(2)
 

 In each Plaintiffs’ Brief in Opposition to Defendants’ Motion for Summary Judgment, Plaintiffs argued,
 
 inter alia,
 
 that Defendants’ Motion to Dismiss was defective for failure to comply with new Local Rule
 
 *1225
 
 10(F)(2), which provides that each brief in support of a motion for summary judgment must include a list of undisputed material facts and cite the parts of the record relied upon to support that list. Defendants’ Reply Memorandum in Support of their Motion to Dismiss or in the Alternative for Summary Judgment, filed on August 19,1996, correctly explains that the Local Rules do not require such a list for motions to dismiss.
 
 See
 
 Local Rules of Practice. Since Defendants’ Motion was filed as a Motion to Dismiss pursuant to Rule 12(b)(6), and was subsequently converted to a Motion for Summary Judgment by the Court, this Court FINDS Defendants’ Motion to Dismiss was not defective under Local Rule 10(F)(2) for its failure to include a list of undisputed facts.
 
 [3]
 

 B. Sentara Health System’s Motion to Dismiss
 

 In Defendant Sentara Health’s Rule 12(b)(6) Motion, it asserted that it should be dismissed from this suit because it was not, the Plaintiffs’ employer. In support of its argument, Sentara Health explains that Sentara Hospitals Va Sentara Norfolk General Hospital (“Sentara”) admitted in its answer that it employed the Plaintiffs.
 

 In response, Plaintiffs argue that the Court should deny Sentara Health’s Motion to permit them a reasonable opportunity for discovery to determine the true identity of Plaintiffs’ corporate employer. Plaintiffs note that Sentara has submitted various documents bearing the name of “Sentara Health System” in support of its Motion, such as the Employee Handbook, Plaintiffs’ Acknowledgement Cards, and other employee forms. Plaintiffs allege that Sentara Health never stated under oath that it was not Plaintiffs’ employer. They also claim that Sentara did not admit it was Plaintiffs’ employer when responding to Plaintiffs’ Complaints. Rather, in its Answer, Sentara only admitted it was an employer under the definition of Title VII. Finally, Plaintiffs argue that Sentara Health cannot be dismissed as an improper Defendant because Title VII applies, even in the absence of a direct employment relationship with Sentara Health.
 
 See Pelech v. Klaff-Joss L.P.,
 
 815 F.Supp. 260, 262-63 (N.D.Ill.1993) (case cited by Plaintiffs).
 

 According to Sentara’s Employee Handbook, Sentara Health System is a health management company made up of six subsidiaries, each with its own management staff and board of directors.
 
 See
 
 Defs.’ Mem.Supp.Mot.Dismiss Ex. B at 3. Sentara Health’s “major service lines are developed and managed through its subsidiaries.”
 
 Id.
 
 Sentara Hospitals-Norfolk, which owns and operates Sentara Norfolk General Hospital, is listed as one of Sentara Health’s subsidiaries.
 
 Id.
 
 It is possible that after a reasonable opportunity for discovery, Plaintiffs will be able to prove that the parent company Sentara Health is a proper Defendant in this action. Therefore, this Court DENIES Defendant Sentara Health’s Motion to Dismiss.
 
 [4]
 

 C. Title VII Claims
 

 Defendant Sentara has not moved for dismissal of the Title VII Count against it. Defendant Schwarga, however, argues that she is not an “employer” within the meaning of Title VII. She seeks dismissal of the Title VII claim asserted by both Plaintiffs against her individually.
 

 In Count I of Plaintiff Michael’s Amended Complaint, Michael claims that she informed Schwarga of her religious objections to assisting in abortions and her desire to transfer
 
 *1226
 
 out of the Labor and Delivery unit. Michael Am.Compl. ¶¶ 16, 17, 23. Michael also alleges that her transfer to another department was denied because Schwarga gave her a negative reference. According to Michael, Schwarga did this to retaliate against Michael for her complaint about Sentara’s unlawful employment practices and Michael’s personal opposition to abortion.
 
 Id.
 
 ¶¶25, 26. Michael alleges Schwarga violated Title VII when Defendants wrongfully terminated her based on absenteeism, which Michael claims is due in part to Defendants’ refusal to accommodate her religious objections to abortion.
 
 Id.
 
 ¶¶ 29, 30, 36.
 

 In Count I of Plaintiff Benson’s Amended Complaint, she also claims she notified Schwarga of her religious objections to assisting in abortions. Benson Am.Compl. ¶ 13. Benson asserts that Defendants violated Title VII when they wrongfully suspended her, pending discharge, because of her conduct while performing nursing services in connection with pregnancy termination. Benson was eventually discharged for this conduct, which she claims is the result of her objections to performing abortions.
 
 Id.
 
 ¶ 17.
 

 Title VII defines the term “employer” as “a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person.” 42 U.S.C. § 2000e(b). Under the majority view, the term “any agent of such a person” does not impose liability upon individual supervisors, as the relief granted under the statute is “against the employer, not the individual employees whose actions would constitute a violation of the Act.”
 
 Busby v. City of Orlando,
 
 931 F.2d 764, 772 (11th Cir.1991) (emphasis omitted);
 
 Grant v. Lone Star Co.,
 
 21 F.3d 649, 651-53 (5th Cir.),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994). The Fourth Circuit, however, is among the minority of circuits which continues to recognize some individual capacity suits under Title VII.
 
 See Paroline v. Unisys Corp.,
 
 879 F.2d 100 (4th Cir.1989),
 
 vacated in part on other grounds,
 
 900 F.2d 27 (4th Cir.1990).
 

 The
 
 Paroline
 
 holding, however, is a narrow one. Athough individual capacity suits are permissible under Title VII, such suits are the exception rather than the rule. Cases subsequent to
 
 Paroline
 
 have dismissed individual capacity suits when the actions of the individual involve “personnel decisions of a plainly delegable nature.”
 
 Birkbeck v. Marvel Lighting Corp.,
 
 30 F.3d 507, 510 & n. 1 (4th Cir.),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994);
 
 Mitchell v. R.J.K. of Gloucester, Inc.,
 
 899 F.Supp. 246, 247-48 (E.D.Va.1995) (Doumar, J.) (dismissing individual from race discrimination suit on authority of Birkbeck);
 
 Lane v. David P. Jacobson & Co., 880
 
 F.Supp. 1091, 1095-96 (E.D.Va.1995) (Miller, Mag. J.) (dismissing individual from sexual harassment suit on authority of
 
 Birkbeck,
 
 stating that “the clear implication of the decision in
 
 Birkbeck
 
 was that the Fourth Circuit does not support individual liability for agents of employers under Title VII”).
 

 In
 
 Birkbeck,
 
 the Fourth Circuit interpreted the identical definition of “employer” found in the Age Discrimination in Employment Act (“ADEA”), and held that the term “agent” was nothing more than “an unremarkable expression of respondeat superi- or — that discriminatory personnel actions taken by an employer’s agent may create liability for the employer.”
 
 Birkbeck,
 
 30 F.3d at 510. The court reasoned that it would be illogical to hold an individual who supervises a small number of employees liable under the ADEA, when the statute exempts small business owners from liability.
 
 Id.
 
 Distinguishing
 
 Paroline,
 
 the court wrote: “An employee, however, may not be shielded as an employer’s agent in all circumstances. We address here
 
 only personnel decisions of a plainly delegable nature.” Id.
 
 at 510 n. 1 (emphasis added).
 

 Courts in the Eastern District of Virginia have subsequently relied on this footnote in
 
 Birkbeck
 
 as authority to dismiss individual liability claims under Title VII where the individual’s decisions were delegable. In clarifying which claims would be considered “delegable,” and therefore dismissible, this Court interpreted the
 
 Birkbeck
 
 footnote
 

 to mean that decisions that any employee in a supervisory position might make, i.e., hiring, firing, or discipline, may be delegate ed within the corporation and thus shield
 
 *1227
 
 an individual from liability under employment discrimination laws. By contrast,
 
 Birkbeck
 
 implies, correctly, that sexual harassment is not “plainly delegable,” and thus individual liability can apply in such cases.
 

 Mitchell,
 
 899 F.Supp. at 248 n. 4.
 

 In
 
 Mitchell,
 
 the individual supervisor, a McDonald’s manager, was named because he was the person who terminated the plaintiff because she refused to sign a statement releasing her employer from liability for problems with her pregnancy. She had argued that the discharge was race-based, because white and light-skinned black co-workers had not been required to sign such a release. The Court applied the
 
 Birkbeck
 
 reasoning to dismiss the claim against the manager on a 12(b)(6) motion.
 
 Id.
 
 at 247-48.
 

 In
 
 Shoemaker v. Metro Information Services,
 
 910 F.Supp. 259 (E.D.Va.1996) (Jackson, J.), the Court similarly held that individual supervisors are only liable in Title VII cases “where they wield significant control over plaintiffs and their conduct cannot be categorized as a plainly delegable duty.”
 
 Id.
 
 at 265. In
 
 Shoemaker,
 
 plaintiffs alleged that their supervisor committed repeated acts of sexual harassment.
 
 Id.
 
 at 261-62. Since the defendant supervisor’s actions were clearly not delegable, the Court denied his motion to dismiss.
 
 Id.
 
 at 266.
 

 Like the defendant in
 
 Mitchell,
 
 and unlike the defendant in
 
 Shoemaker,
 
 Schwarga is only accused of performing “plainly delegable” duties, namely discipline and ultimate termination of the Plaintiffs as a result of their failure to report for work and failure to perform the duties required by their jobs as nurses in the Labor and Delivery unit. At the July 2 hearing, counsel for Plaintiffs suggested that Sehwarga had some personal motivation behind her enforcement of Sentara policy. Counsel claimed that Sehwarga was particularly vigilant in dispelling religious objections to abortion as a result of her personal interest in persuading her coworkers to her moral view of the subject.
 

 Despite having taken a deposition of Sehwarga and conducting a few months of discovery, Plaintiffs have not put forth any testimony or document which would indicate these allegations are anything more than bald speculation. Instead of offering support for their assertions, Plaintiffs instead offered to dismiss Sehwarga without prejudice. The Court finds that Sehwarga is charged with no more than the plainly delegable duties associated with her role as Plaintiffs’ supervisor. Accordingly, on the authority of the Fourth Circuit’s decision in
 
 Birkbeck,
 
 and this Court’s own precedent, Sehwarga is not an “employer” under Title VII. Defendants’ Motion for Summary Judgment on the Title VII claim against Sehwarga is, therefore, GRANTED.
 

 D. Wrongful Discharge Claims
 

 In Counts II and VII, Plaintiffs allege that Defendants wrongfully discharged them in violation of Virginia public policy, as expressed in the Virginia Human Rights Act, Va.Code Ann. § 2.1-715, Virginia’s statutory regulation of second and third trimester abortions, Va.Code Ann. § 18.2-74, 74.1, and the Virginia abortion “Conscience Clause,” Va.Code Ann. § 18.2-75. In their Motion to Dismiss, Defendants raised three arguments against Plaintiffs wrongful discharge counts: (1) Plaintiffs’ claims are barred by the applicable one-year statute of limitations; (2) there is no Virginia cause of action for constructive wrongful discharge in violation of the state’s public policy; and (3) Virginia has never recognized religious discrimination as the basis for a wrongful discharge claim in violation of Virginia public policy under any of the statutes relied upon by Plaintiffs.
 

 Virginia is an at-will employment state.
 
 Bowman v. State Bank of Keysville,
 
 229 Va. 534, 535, 331 S.E.2d 797 (1985). Under the doctrine of at-will employment, when an employment contract does not state the duration of time for which it is to run, either party is free to terminate the contract at will after giving reasonable notice.
 
 Id.
 
 Employment at-will, however, is not absolute.
 
 Id.
 
 at 539. In
 
 Bowman,
 
 the Virginia Supreme Court recognized “a narrow exception to the employment-at-will rule” where the employer terminates its employee in violation of Virginia public policy.
 
 Id.
 
 at 540. The court in
 
 Bowman
 
 found that the plaintiffs stated a
 
 *1228
 
 cause of action for wrongful discharge in violation of the public policy underlying Virginia’s securities and corporation laws, where they alleged that they were fired after voting their shares in the corporation against the wishes of management.
 
 Id.
 

 In
 
 Miller v. SEVAMP, Inc.,
 
 234 Va. 462, 362 S.E.2d 915 (1987), the court clarified the meaning of public policy as it relates to a cause of action for wrongful discharge:
 
 “Bowman
 
 recognized an exception to the employment-at-will doctrine limited to discharges which violate
 
 public
 
 policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general.”
 
 Id.
 
 at 468, 362 S.E.2d 915 (emphasis in original). The court held that Virginia does not recognize a cause of action for retaliatory discharge where “only
 
 private
 
 rights or interests” are at stake.
 
 Id.
 
 (emphasis added). In
 
 Miller,
 
 plaintiff alleged wrongful discharge where she was fired after filing a grievance with her employer in accordance with the employment handbook. The court dismissed plaintiffs wrongful discharge claim, holding that such a retaliatory discharge only impinged upon plaintiffs
 
 private
 
 rights as established by the employer’s internal regulations — it did not violate any
 
 public
 
 policy of Virginia.
 
 Id.
 
 In the case at bar, however, Plaintiffs claim that their wrongful discharge violated Virginia’s
 
 public
 
 policy. Before considering this argument, the Court will first address the threshold issues of whether the claims for wrongful discharge are time-barred and whether Virginia recognizes a cause of action for constructive wrongful discharge.
 

 1. Statute of limitations
 

 The Amended Complaints allege that Benson was terminated on December 22, 1994, and that Michael was terminated on January 5, 1995. Plaintiffs did not file the present action until March 1, 1996. Therefore, Defendants argue that, as a matter of law, Plaintiffs’ claims for wrongful discharge are barred by the one-year statute of limitations in Virginia Code section 8.01-248 (Michie 1992) (“Every personal action, for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued.”).
 
 [5]
 
 Plaintiffs argue that the two-year statute of limitations for personal injury, Va.Code Ann. § 8.01-243(A) (Michie 1992), should apply rather than the catch-all one-year limitation period. Michael further asserts that even if the one-year limit applies, her claim is still not barred because she suffered a constructive wrongful discharge on February 1,1995.
 

 a. Statute of limitations governing wrongful discharge cause of action
 

 The United States Court of Appeals for the Fourth Circuit has specifically held that the one-year catch-all statute of limitations, Va.Code Ann. § 8.01-248, rather than the two-year personal injury limitation period, Va.Code Ann. § 8.01-243(A), applies to Virginia common law actions for wrongful discharge.
 
 Costantino v. Jaycor,
 
 No. 86-2559, 1987 WL 37097, at *3 (4th Cir. April 14, 1987) (unpublished per curiam opinion)
 
 [6]
 
 (holding that section 8.01-248 governs Virginia common law wrongful discharge claims, since employee discharge in Virginia is a tort,
 
 Bowman,
 
 229 Va. at 540, 331 S.E.2d 797);
 
 see Guiden v. Southeastern Public Service Authority of Virginia,
 
 760 F.Supp. 1171, 1179 (E.D.Va.1991) (Doumar, J.) (same).
 

 Moreover, the Virginia Supreme Court in
 
 Purcell v. Tidewater Construction Corp.,
 
 250 Va. 93, 458 S.E.2d 291 (1995), also held that the one-year statute of limitations contained in section 8.01-248 applies to related actions pursuant to Virginia Code section 65.2-308 for wrongful termination of employment in retaliation for filing a workers’ compensation claim.
 
 Id.
 
 at 94, 458 S.E.2d 291. The
 
 Purcell
 
 court explained that the catch-all one-year limit applied because plaintiffs filed a suit for wrongful termination, not a suit for “ ‘positive, physical or mental hurt,’ ” i.e., a
 
 *1229
 
 personal injury suit under Virginia Code section 8.01-243(A).
 
 Id.
 
 at 95-96, 458 S.E.2d 291,
 
 citing Locke v. Johns-Manville Corp.,
 
 221 Va. 951, 957, 275 S.E.2d 900 (1981).
 

 Plaintiffs attempt to distinguish
 
 Purcell from
 
 the present action. They claim that unlike
 
 Purcell,
 
 where the plaintiff did not allege physical or mental injury, they have alleged in Counts II and VII that, in addition to loss of wages and benefits, they “suffered mental anguish and emotional distress resulting in physical harm” when they were discharged. Benson Am.Compl. ¶ 55; Michael Am.Compl. ¶ 65. Plaintiffs suffered tort-like injuries, therefore they argue that the two-year statute of limitations for personal injury actions should apply to their wrongful discharge claims.
 
 See
 
 Va.Code Ann. § 8.01-243(A).
 
 [7]
 

 In Counts II and VII, Plaintiffs are suing under a theory of wrongful discharge, not a personal injury or emotional distress theory. The one-year statute of limitations under section 8.01-248 therefore applies to their wrongful discharge claims, regardless of the fact that Plaintiffs allege in Counts II and VII that the Wrongful discharge caused damages in the form of emotional and physical harm.
 

 Next, Plaintiffs argue that amended section 8.01-248, which extends the limitation period on miscellaneous causes of action to two years, should apply retroactively to cover their cases. Va.Code Ann. § 8.01-248 (Michie Supp.1996). Last year, the Virginia General Assembly amended section 8.01-248 to read the following: “Every personal action accruing on or after July 1, 1995, for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring sueh action has accrued.” Plaintiffs’ causes of action clearly accrued before July 1, 1995, and they do not argue otherwise. What they suggest is that the amended section 8.01-248 applies retroactively to encompass their causes of action.
 
 See Parris v. Appalachian Power Co.,
 
 2 Va.App. 219, 229, 343 S.E.2d 455 (1986) (stating that amendments enlarging a statute of limitations generally apply to existing cases). Plaintiffs’ argument is frivolous, as nothing in the amended statute suggests that it applies retroactively. In fact, the inclusion of an effective date, July 1, 1995, suggests just the opposite. Thus, it is the pre-amendment section 8.01-248 with the one-year statute of limitations, not the amended statute, which controls the wrongful discharge claims.
 

 In an attempt to avoid the Court’s application of the one-year limitation period, Plaintiffs also submitted a Petition for Certification of Law, in which they asked the Court to certify certain statute of limitations issues to the Virginia Supreme Court. The petition asked the Court to certify three questions relevant to Plaintiffs’ wrongful discharge claims. First, Plaintiffs questioned whether Virginia’s Conscience Clause imbues their claims with sufficient implied contractual obligations to warrant application of Virginia’s three-year contract limitation period, Va. Code Ann. § 8.01-246 (Michie 1992), to a wrongful discharge claim based on the Conscience Clause. This Court recently rejected a similar argument, holding that “[wjrongful discharge claims fall under Virginia’s catchall statute of limitations, Va.Code Ann. § 8.01-248.”
 
 Sutter v. First Union Nat’l Bank of Virginia,
 
 932 F.Supp. 753, 757 (E.D.Va.1996) (Smith, J.) (for a cause of action under section 510 of ERISA, which is similar to a wrongful discharge claim, the catch-all statute of limitations, section 8.01-248, rather than the limitation period for contract actions applies).
 

 In the Petition for Certification, Plaintiffs also questioned whether the physical and mental injury alleged in their Complaints was sufficient to warrant application of the two-year limitation period for personal injury claims to their wrongful discharge counts. Va.Code Ann. § 8.01-243(A). The Court has
 
 *1230
 
 already addressed this question herein, and rejected Plaintiffs’ argument.
 
 [8]
 

 Finally, Plaintiffs sought a Virginia Supreme Court determination of whether the federal statutes referred to in the Virginia Human Rights Act were sufficient to establish that a wrongful discharge claim under the Virginia statute was really based on “federally created rights.” If it were, Plaintiffs argued that they might be able to escape the one-year limitation period, as the
 
 Purcell
 
 decision cited for the one-year period contains an exception where the claim is dependent upon “federally created rights” with a different statutory period.
 
 Purcell,
 
 250 Va. at 95, 458 S.E.2d 291. In
 
 Purcell,
 
 the court explained that,
 

 The United States Supreme Court, for purposes of consistency, has determined that actions brought pursuant to 42 U.S.C. §§ 1983 and 1988 are, as a matter of federal law, actions for personal injury and, therefore, subject to a state’s limitation period for personal injury____ This application of the limitation period does not affect, and is unaffected by, our interpretation of whether a cause of action is a personal action for personal injuries.
 

 Id.
 
 at 95 n. 3, 458 S.E.2d 291 (citations omitted).
 

 According to Plaintiffs, since the Virginia Human Rights Act specifically includes any type of discrimination under federal law, and religious discrimination is prohibited under Title VII, Counts II and VII for wrongful discharge in violation of Virginia’s public policy against discrimination derive from a federally created right. Plaintiffs argue that the two-year statute of limitations applies to their claims because
 
 Purcell
 
 acknowledged that the two-year statute of limitations for personal injury suits is applicable for causes of action based on federally created rights. This interpretation misreads
 
 Purcell,
 
 which specifically referred to actions under sections 1983 and 1988, neither of which are involved in the case at bar. As noted previously, Counts II and VII are claims for wrongful discharge, not for breach of contract, personal injury, or violation of any federal statute.
 
 [9]
 
 Thus, the exception for claims dependent upon “federally created rights” in
 
 Purcell
 
 does not help Plaintiffs.
 

 At the time these actions accrued, the statute of limitations under section 8.01-248 was one year. Accordingly, this one-year statute of limitations applies to Plaintiffs’ claims of wrongful discharge.
 

 b. Plaintiff Benson did not meet the one-year limit
 

 There is no dispute that Plaintiff Benson was terminated by Sentara on December 22, 1994, and that she did not bring suit until March 1, 1996, more than one year later. Thus, under the one-year limitation period, Benson’s wrongful discharge claims in Counts II and VII are time-barred.
 

 c.
 
 Plaintiff Michael met the one-year limit only if she can state a cause of action far constructive wrongful discharge
 

 Plaintiff Michael argues that even if the one-year limitation period applies, her wrongful discharge claims in Counts II and VII are not barred. Michael entered into an agreement whereby Sentara agreed to toll the statute of limitations for the period between January 26, 1996, and March 1, 1996, with respect to any claim asserted by Michael against Sentara. Pl.’s Br.Opp’n Defs.’ Mot.Summ.J. Ex. 16-18. The parties further agreed that the tolling of the limitation period applied only to those causes of action for which the statute of limitations has run or will run between January 26, 1996, and March 1, 1996.
 
 Id.
 
 Therefore, if Michael’s termination date falls between January 26, 1995, and March 1, 1995, she will be within the one-year statute of limitations.
 

 Plaintiff Michael admits she was terminated by Sentara on January 5, 1995, Michael Am.Compl. ¶ 29, and there is no evidence of any other actual discharge by Sentara after
 
 *1231
 
 that date.
 
 [10]
 
 The one-year limitation period on that alleged wrongful discharge had therefore expired when she filed this suit on March 1, 1996. Thus, Michael’s claims in Counts II and VII for actual wrongful discharge are time-barred. However, Michael asserts that she was reinstated sometime after January 5, 1995, and then “constructively discharged” on February 1,1995. Unlike the actual discharge on January 5, the February 1,1995, constructive discharge falls within the relevant period in the tolling agreement, thereby making Michael’s March 1,1996, filing timely.
 

 Michael bases her claim of constructive discharge on negotiations she had with the Human Resource staff at Sentara after she was terminated on January 5, 1995. She alleges that Joy McDonald, the Human Resource Consultant at Sentara, called on or about January 10,1995, and told Michael she was reinstated to her position in the Labor and Delivery unit. Michael Aff. ¶¶ 11-13 (July 16, 1996); Michael Am.Compl. ¶32. According to Michael, McDonald also promised her back pay and told her she had thirty (30) days to transfer as an internal candidate to another department within Sentara.
 
 Id. On
 
 January 13, Michael claims she received a handwritten note and printout of Sentara positions from McDonald. Michael Aff. ¶ 15 (July 16, 1996);
 
 see also
 
 Marshall Aff. (Aug. 13, 1996) (stating that in mid-January Michael let her review a computer printout of Sentara’s available positions, and that a handwritten note was attached). Michael submitted fourteen (14) transfer requests on or about January 17, but was never transferred nor given the promised back pay. Michael Aff. ¶ 16 (July 16, 1996); Michael Am.Compl. ¶ 33-34. Michael asserts she was constructively discharged on February 1, 1995, when she heard nothing further from Sentara regarding the transfers and proceeded to seek other employment rather than remain in the Labor and Delivery unit. Michael Am.Compl. ¶ 35.
 

 In support of her allegations, Michael offered the deposition testimony of McDonald, and a memorandum to McDonald from another Human Resource employee, Jackie Johnson, who filled in for McDonald when she was out of the office on January 6, 1995. In the memorandum, Johnson suggested giving Michael thirty (30) days to apply as an internal candidate and said that she thought the way Michael’s termination was handled was “HORRIBLE.” McDonald Dep. Ex. 5. That document and McDonald’s testimony, although somewhat confused and equivocal, establish that Sentara considered Michael’s termination to have been handled badly and that Sentara apparently agreed to let her pursue additional opportunities within the hospital after her termination. Michael also submitted an electronic mail (e-mail) message from McDonald, dated February 2, 1995, which states, “We have reversed [Michael’s] termination. Please hold onto her file for a little longer.” Pl.’s SuppLAff.Opp’n Defs.’ Mot.Summ.J. Ex. A. Michael argues that all of these documents establish that she was reinstated as an employee of Sentara sometime after January 5, 1995, and then constructively terminated on February 1, 1995, when she decided to leave Sentara and pursue other employment.
 

 For the purposes of this motion, the Court must view the evidence in the light most favorable to the non-moving party, which is Michael. Therefore, assuming Michael’s scenario of events to be true, the Court must still determine whether Virginia recognizes a cause of action for constructive wrongful discharge.
 

 
 *1232
 

 2. Constructive wrongful discharge under Virginia Law
 

 In an attempt to get around the one-year statute of limitations, Michael claims she was constructively discharged on February 1, 1995, when she proceeded to seek other employment after Sentara failed to transfer her from Labor and Delivery to another department within the hospital. Michael Aff. (July 16, 1996) ¶ 35. Defendants argue that there is no cause of action under Virginia law for constructive wrongful discharge, citing
 
 Hairston v. Multi-Channel TV Cable Co.,
 
 No. 95-2363, 1996 WL 119916, at *2 (4th Cir. March 19,1996) (unpublished per curiam opinion)
 
 [11]
 
 (affirming the district court’s dismissal of plaintiffs claim of constructive discharge in violation of Virginia public policy, because no Virginia court has recognized such a cause of action);
 
 Dixon v. Denny’s, Inc.,
 
 No. 95-901, at 9-12 (E.D.Va. filed July 24, 1996) (MaeKenzie, J.) (unpublished opinion and order granting partial summary judgment); and
 
 Jones v. Professional Hospitality Resources, Inc.,
 
 35 Va.Cir. 458, 460 (1995).
 

 In
 
 Jones,
 
 a Virginia case, the plaintiff alleged the defendant constructively discharged her by giving her less desirable tasks and reduced hours after she complained of unwanted sexual advances.
 
 Jones,
 
 35 Va.Cir. at 458-59. The court granted the defendant’s motion for summary judgment, holding that the tort of wrongful discharge in violation of Virginia public policy does not extend to constructive discharge.
 
 Id.
 
 at 460-62. The court stated:
 

 The at-will employment relationship permits termination of services by the employer or the employee, for any reason. When the employee chooses to resign, no special rule applies. It is only when the employer actually terminates the’employee in violation of some established public policy that the narrow exception is applied.
 

 Moreover, given that the exception is indeed a narrow one which the courts of Virginia have sparingly applied and that the notion of constructive discharge as a basis for the exception has not been recognized in Virginia, it is the opinion of the Court that the exception should not now be expanded.
 

 Id.
 
 at 460-61.
 

 This Court recently held that as a matter of law, “a claim for constructive discharge does not yet exist under Virginia law.”
 
 Dixon,
 
 No. 95-901, at 9.
 
 But see Ecklund v. Fuisz Technology, Ltd.,
 
 905 F.Supp. 335, 340-41 (E.D.Va.1995) (Brinkema, J.) (holding that an employee could maintain a claim for constructive discharge in violation of Virginia’s public policy exception to the employment at-will doctrine). In
 
 Dixon,
 
 after the plaintiff left her employment voluntarily because of repeated sexual harassment by another employee, she filed suit alleging she was “constructively discharged.” Citing the recent Fourth Circuit case
 
 Hairston,
 
 1996 WL 119916, the Court concluded such a cause of action did not currently exist in Virginia, and that “a federal court should not interpret Virginia’s public policy exception to the employment at-will doctrine to encompass constructive as well as actual discharge unless and until Virginia’s courts have unequivocally done so.”
 
 Dixon,
 
 No. 95-901, at 10. Thus, the Court granted defendants’ motion for summary judgment as to the plaintiffs claims for constructive wrongful discharge.
 
 Id.
 

 In accordance with
 
 Hairston, Dixon,
 
 and
 
 Jones,
 
 Michael’s claims of constructive wrongful discharge in Counts II and VII are DISMISSED for failure to state a claim.
 
 [12]
 

 
 *1233
 

 E. Emotional Distress Claims
 

 Both Plaintiffs originally claimed that Sentara and Sehwarga were liable for their intentional and/or negligent infliction of emotional distress. At the July 2 hearing, the Court found the allegations in the original Complaints insufficient to state a claim, but granted Plaintiffs leave to amend their Complaints to properly plead their emotional distress counts. In the Amended Complaints, filed July 16, 1996, Michael omitted her claims for intentional and negligent infliction of emotional distress, apparently conceding that she did not suffer severe enough distress to state a claim under Virginia law. Benson added one line to her emotional distress claims. The new language asserts that Benson was “unable to work, suffered a diminished appetite, had difficulty with her concentration, lost income and was largely confined to her home for several months following the events alleged herein.” Benson Am.Compl. ¶ 31.
 

 The Defendants argue that the revised allegation, even taken as true, is still insufficient to state a claim for relief under Virginia law.
 

 1. Intentional infliction of emotional distress
 

 Because injury to the mind or emotions can be easily feigned, actions for intentional infliction of emotional distress are not favored in Virginia.
 
 See Ruth v. Fletcher,
 
 237 Va. 366, 373, 377 S.E.2d 412 (1989);
 
 Dixon v. Denny’s, Inc.,
 
 No. 95-901, at 4 (E.D.Va. filed July 24, 1996). In order to establish a claim under Virginia law for intentional infliction of emotional distress, Benson must allege and prove: (1) intentional or reckless conduct by Defendants; (2) conduct that was outrageous or intolerable; (3) a causal connection between Defendants’ conduct and the emotional distress; and (4) severe emotional distress.
 
 Womack v. Eldridge,
 
 215 Va. 338, 342, 210 S.E.2d-145 (1974). Defendants claim that Benson failed to satisfy the four elements of the
 
 Womack
 
 test.
 

 Defendants argue that Benson cannot state a claim for intentional infliction of emotional distress because she did not allege sufficiently severe emotional distress. This last element of the
 
 Womack
 
 test is difficult to satisfy. Several courts have held the plaintiffs allegation of facts insufficient to support a claim for severe emotional distress. In
 
 Russo v. White,
 
 241 Va. 23, 25, 400 S.E.2d 160 (1991), for example, the Virginia Supreme Court affirmed the dismissal of plaintiffs suit where she alleged severe emotional distress in the form of nervousness, sleeplessness, stress and its physical symptoms, withdrawal from activities, and lack of concentration. The court noted that plaintiff did not claim “that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in the hospital, or that she lost income.”
 
 Id.
 
 at 28, 400 S.E.2d 160. Accordingly, the court found that her allegations were “not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it.”
 
 Id.
 

 In her intentional infliction of emotional distress count in
 
 Levine v. McLeskey,
 
 881 F.Supp. 1030, 1054 (E.D.Va.1995) (Jackson, J.), the plaintiff maintained that she lost weight, frequently cried, and that she seriously contemplated suicide. Citing
 
 Russo,
 
 the Court held that these allegations “do not qualify as the type of emotional distress that will state a cause of action in Virginia.”
 
 Id.
 
 The Court noted that the plaintiff did not interrupt her normal schedule, cease functioning normally, or seek medical treatment.
 
 Id.
 

 In
 
 Dixon,
 
 this Court granted summary judgment on the plaintiff’s emotional distress claims where the plaintiff produced no objectively verifiable evidence to support her allegations of severe emotional distress, such as medical records or the testimony of friends and family.
 
 Dixon,
 
 No. 95-901, at 5. The Court noted that it was not bound by plaintiffs conelusory allegations that another employee’s sexual harassment made her “fearful and degraded, and that she suffered head
 
 *1234
 
 aches and vomiting as a result of his behavior.”
 
 Id.
 

 In her Amended Complaint, Benson alleges she was “unable to work, suffered a diminished appetite, had difficulty with her concentration, lost income and was largely confined to her home for several months following the events alleged herein.” Benson Am.Compl. ¶31. Benson claims her suit should not be dismissed because, unlike the plaintiffs in
 
 Russo
 
 and
 
 Levine,
 
 Benson alleges she was unable to work, largely confined to her home, and that she lost income because of Defendants’ actions. But inability to work, home confinement, and lost income are also generally a consequence of unemployment. Although she alleges she suffered a diminished appetite and had difficulty concentrating, there are no allegations that she sought medical treatment, that she ceased functioning normally, or that the stress caused her any objectively verifiable physical or emotional injury. There are no allegations of “extreme emotional distress that is so severe that no reasonable person should be expected to endure it.”
 
 Russo,
 
 241 Va. at 25, 400 S.E.2d 160. Thus, Benson’s allegations of emotional distress in her Amended Complaint are insufficient to state a cause of action.
 

 Benson must sufficiently allege and prove all four elements of the
 
 Womack
 
 test for intentional infliction of emotional distress. As she has not alleged severe emotional distress rising to the level required to state a cause of action, her claim for intentional infliction of emotional distress is DISMISSED.2 **********
 
 [13]
 

 2. Negligent infliction of emotional distress
 

 The standard for negligent infliction of emotional distress is even more rigorous than the standard for intentional infliction of emotional distress. To survive a motion to dismiss in a claim for negligent infliction of emotional distress without physical impaet, a plaintiff must plead that the conduct caused the plaintiff
 
 both
 
 emotional disturbance and physical injury.
 
 See Myseros v. Sissler,
 
 239 Va. 8, 12, 387 S.E.2d 463 (1990);
 
 Hughes v. Moore,
 
 214 Va. 27, 34, 197 S.E.2d 214 (1973). The plaintiff must put forth clear and convincing evidence of “symptoms” or “manifestations” of physical injury; symptoms of emotional disturbance alone provide no basis for recovery.
 
 Id.
 

 Benson alleges in her negligent infliction of emotional distress claim only that she “suffered and continues to suffer emotional and/or mental distress resulting in physical harm.” Benson Am.Compl. ¶ 34. The Court agrees with Defendants that Plaintiff has failed to satisfy Virginia law by alleging either physical impact or any symptoms or manifestations of her purported physical harm. Plaintiff has merely stated she suffers from emotional and mental disturbance “resulting in physical harm.” This Court therefore holds that her claim for negligent infliction of emotional distress is DISMISSED.
 

 F. Contract Claims
 

 Plaintiffs admit that Defendant Schwarga is not a proper party defendant in any of the counts sounding in contract. Accordingly, these claims are asserted only against Sentara. In Counts V, VI, and VIII, Plaintiffs claim Sentara breached certain contract rights. According to Plaintiffs, they had a contract of employment with Sentara which originated in Sentara’s representations in its Employee Handbook and in other materials that it would exercise no bias or discrimination in employment and that it would use a progressive system of discipline. Plaintiffs also found contract rights in Sentara’s administrative policies and its medical procedures and polices for treating patients undergoing pregnancy termination. Plaintiffs claim that these representations by Sentara created terms and conditions of employment, which Sentara later breached.
 

 
 *1235
 
 Sentara moved to dismiss all of these counts, claiming that Plaintiffs were at-will employees throughout their employment. It submitted as supporting material various documents, including a copy of Sentara’s Employee Handbook, the Acknowledgment Cards signed by each Plaintiff upon receipt of the Handbook, and their signed Employment Applications. Consideration of these documents necessitates treating this Motion to Dismiss as one for Summary Judgment. Fed.R.Civ.P. 12(b).
 

 In Plaintiffs’ first contract claim, they allege Sentara held itself out as an EEO Employer and made various oral and written representations that it would exercise no bias or discrimination in employment. Such a claim was made in the Employee Handbook.
 
 See
 
 Defs.’ Mem.Supp.Mot. Dismiss Ex. B. According to Plaintiffs, their reliance on these representations forms the basis of a contract of employment which was breached by Sentara.
 

 Sentara, relying on common sense and Eastern District of Virginia authority, argues that mere agreement to abide by federal law cannot be construed as an additional contractual representation sufficient to take the parties out of the at-will presumption.
 
 Nicol v. Imagematrix, Inc.,
 
 767 F.Supp. 744, 755 (E.D.Va.1991) (Ellis, J.) (“A general statement of policy to abide by federal law (e.g., Title VII) cannot reasonably be construed as a deviation from at-will employment.”). Thus, Sentara’s statement that it will exercise no bias or discrimination in employment as an EEO employer does not create a contract between Sentara and Plaintiffs.
 

 Plaintiffs also assert that Sentara’s administrative polices and its established medical procedures and policies related to performing abortions were a term and condition of Plaintiffs’ continued employment at Sentara. In support of their argument, they attach: (1) Policy 1001, Rationale of the Sentara Hospital Administrative Policy Manual,
 
 see
 
 Pl.’s Br.Oppo.Defs.’ Mot.Summ.J. Ex. 4; (2) Policy 40009.1-2, Consent for Induced Termination of Pregnancy, Abortion,
 
 id.
 
 (Included in Policy 40009.1-2 is the Virginia Conscience Clause, which states: “Any employee who shall submit a statement in writing to their immediate supervisor objecting to any or all abortions on personal, ethical, moral, or religious grounds shall not be required to participate in such procedures which will result in such abortions.”); and (3) an excerpt from the Women’s Health Practice and Policy Manual regarding abortions in the Labor and Delivery unit.
 
 See
 
 Dudley Dep. Ex. 9 (“Nurses have the right to refuse to assist with the procedure in keeping with their moral, ethical, and/or religious beliefs except in an emergency, but they must notify the head nurse or charge nurse so that appropriate staff may be provided.”). Both Plaintiffs allege that Sentara breached these policies and that Plaintiffs suffered damage as a result. Apparently this means that Plaintiffs relied on Sentara’s adherence to their administrative policies and treatment regimens in continuing to work there.
 

 Plaintiffs finally allege that contract rights originate out of Sentara’s “Corrective Action Policy” in its Employee Handbook, which outlines the specific procedures to be followed when Sentara disciplines an employee.
 
 See
 
 Pl.’s Br.Opp’n Defs.’ Mot.Summ.J. Ex. 2 at 17-20. According to Plaintiffs, these procedures were terms and conditions of Plaintiffs’ employment since they were regular employees. Plaintiffs claim Sentara was bound to perform the procedures outlined in the Corrective Action Policy, and its failure to follow the disciplinary procedures breached this term and condition of Plaintiffs’ employment.
 

 Sentara’s argument that Plaintiffs were at-will employees throughout their employment is well-documented. Sentara’s Employee Handbook is replete with disclaimers indicating that the Handbook is not a contract and does not alter the parties’ at-will employment status.
 
 See
 
 Defs.’ Mem.Supp.Mot. Dismiss Ex. B. Sentara also submitted copies of Plaintiffs’ Acknowledgment Cards, which were signed upon receipt of the Handbook and which indicate the parties’ agreement that the Handbook does not confer contractual rights.
 
 Id.
 
 Ex. C. Finally, Sentara submitted Plaintiffs’ signed Employment Applications, which indicate that, if hired, Plaintiffs would be terminable at will and free to leave at any time for any reason.
 
 Id.
 
 Ex. D.
 

 
 *1236
 
 Employee handbooks can, in certain circumstances, confer contractual rights.
 
 Thompson v. American Motor Inns, Inc.,
 
 623 F.Supp. 409 (W.D.Va.1985);
 
 Barger v. General Electric Co.,
 
 599 F.Supp. 1154 (W.D.Va.1984). In this case, however, Sentara included specific disclaimers in its Employee Handbook and Employment Applications. In addition, the Acknowledgment Cards signed by both Plaintiffs state that the Handbook did not confer contractual rights or alter the at-will presumption. In such a case, “a clearer expression of intent to create at-will employment can hardly be imagined.”
 
 Miller v. SEVAMP, Inc.,
 
 234 Va. 462, 467, 362 S.E.2d 915 (1987);
 
 see Nicol v. Imagematrix, Inc.,
 
 767 F.Supp. 744, 755 (E.D.Va. 1991) (Ellis, J.);
 
 Sullivan v. Snap-On Tools Corp.,
 
 708 F.Supp. 750, 753 (E.D.Va.1989) (Spencer, J.),
 
 affd
 
 896 F.2d 547 (4th Cir. 1990). Plaintiffs claim that the disclaimers in the Handbook do not apply to Sentara’s representations made outside of the Handbook, such as its oral statements that it would not discriminate in employment, and the statements in Sentara’s policies and procedures not included in the Handbook. The Handbook clearly states: “Although policies, procedures and benefits are provided by the organization, they are not meant as terms or conditions of employment, or guarantees.”
 
 See
 
 Defs.’ Mem.Supp.Mot. Dismiss Ex. B. at 6.
 

 Plaintiffs were clearly at-will employees. The Employee Handbook, Sentara’s policies and procedures, and Sentara’s other alleged oral and written representations did not create terms and conditions of employment nor alter the parties’ at-will employment status. Therefore, the Court GRANTS Defendants’ Motion for Summary Judgment on Plaintiffs’ contract counts against Sentara.
 

 TV. Conclusion
 

 Plaintiffs’ Title VII claims with regard to Sehwarga in Count I are DISMISSED with prejudice. The Court DISMISSES Benson’s and Michael’s actual wrongful discharge claims in Counts II and VII as time-barred, and Michael’s constructive wrongful discharge claims in Counts II and VII for failure to state a claim. Counts III and IV for intentional and negligent infliction of emotional distress, respectively, are DISMISSED for failure to state a claim. Finally, the Court GRANTS Defendants’ Motion for Summary Judgment on Plaintiffs’ contract claims in Counts V, VI, and VIII. The case will proceed to trial on Plaintiffs’ Title VII claims in Count I against Sentara, and Sentara Health Systems at this juncture.
 
 [14]
 

 The Clerk is DIRECTED to send a copy of this opinion to all counsel of record.
 

 It is so ORDERED.
 

 [1]
 

 . Benson’s Amended Complaint does not specify exactly what conduct resulted in her termination. In Benson’s Equal Employment Opportunity Commission (“EEOC”) Charge of Discrimination, however, she claims Defendants told her she was suspended pending discharge "because I
 
 *1223
 
 informed an abortion patient that I believed in pro-life."
 
 See
 
 Defs.' Mem.Supp.Mot. Dismiss Ex. A.
 

 [2]
 

 . The Complaints both assert identical legal claims, however the Title VII count is not numbered in Michael’s original Complaint. That Complaint begins numbering with the second count and runs through count seven. For clarity, this Opinion refers to the counts as one through eight, which is the order in which they appear in both pleadings.
 

 [3]
 

 . Moreover, the application of the local rules is within the discretion of the Court. The purpose of requiring the list of undisputed facts in Local Rule 10(F)(2) is to aid the Court and the parties. The parties have provided this Court with sufficient information in their motions, briefs, and oral argument. Such a list is unnecessary in this case, and it would belabor the process to require it at this late juncture. In asking the Court to find Defendants' Motion defective for failure to comply with this local rule at this stage, Plaintiffs elevate form over substance.
 

 [4]
 

 . Plaintiffs did not add Sentara Health as a Defendant until July 16, 1996, after Defendants Sentara and Schwarga filed their Motion to Dismiss on March 26, 1996, which was converted by the Court into a Motion for Summary Judgment. Even though Sentara Health’s Motion to Dismiss was based on the argument that it is not Plaintiffs’ employer, all of the Court’s legal rulings with regard to Sentara’s Motion for Summary Judgment would apply equally as well to Defendant Sentara Health.
 

 [5]
 

 . Effective July 1, 1995, the limitation period was increased to two years.
 
 See infra
 
 at 1229.
 

 [6]
 

 . Although unpublished decisions are not binding authority, this case is the most available source of the law in the Fourth Circuit and it supports this Court's reasoning in this action.
 

 [7]
 

 . Actions for emotional distress are considered actions for personal injuries, carrying a two-year limitations period.
 
 See, e.g., Moore v. Allied Chemical Corp.,
 
 480 F.Supp. 364, 369 (E.D.Va. 1979). However, this Court holds herein that Benson failed to state a claim in Counts III and IV for intentional and negligent infliction of emotional distress, respectively.
 
 See infra
 
 at 1232-1235. Michael omitted these emotional distress claims from her Amended Complaint, apparently
 
 *1230
 
 conceding that she did not suffer severe enough distress to state a claim under Virginia law.
 

 [8]
 

 .
 
 See supra
 
 at 1228-1229.
 

 [9]
 

 . Plaintiffs do allege in Count I that Defendants violated federally created rights under Title VII. These Title VII claims are going forward against Defendants Sentara, and Sentara Health at this juncture.
 
 See supra
 
 at 1225-1227.
 

 [10]
 

 . Sentara submitted various documents to verify that Michael was terminated on January 5, 1995. In Michael’s EEOC complaint, dated January 23, 1995, she indicates that she was terminated January 5, 1995. Defs.' Mem.Supp.Mot. Dismiss Ex. A. In addition, Sentara's Personnel Action Request form, dated January 16, 1995, indicates a termination date of January 5, 1995. Defs.' Supplemental Mem.Supp.Mot. Dismiss Ex. G. Sentara also submitted the affidavits of Deborah Wade, Sentara’s disbursements supervisor, and Dianne Stockmeier, a Human Resource Consultant with the hospital. Wade states that Michael was paid for unused paid annual leave ("PAL") on her last paycheck, which was for the pay period ending January 14, 1995. Wade Aff. ¶3 (July 23, 1996). Stockmeier explained that unused PAL is only paid when an employee is terminated. Stockmeier Aff. ¶3 (July 23, 1996). Therefore, Michael's January 23, 1995, EEOC complaint and all of Sentara's internal documentation related to Michael’s termination indicate that it was effective, from a record-keeping standpoint, on January 5, 1995.
 

 [11]
 

 .
 
 See supra
 
 note 6.
 

 [12]
 

 . Plaintiffs allege Defendants violated three Virginia statutes which establish a public policy against terminating employees for refusing to assist with an abortion: (a) the Virginia Human Rights Act, Va.Code Ann. § 2.1-715; (b) Virginia’s statutory regulation of second and third trimester abortions, Va.Code Ann. § 18.2-74, 74.1; and (c) the Virginia abortion “Conscience Clause,” Va.Code Ann. § 18.2-75. Defendants argue that religious discrimination cannot be the basis for a wrongful discharge claim in violation of Virginia public policy and that the statutes cited by Plaintiffs do not establish a public policy against Defendants’ act of terminating Plaintiffs.
 

 Since Benson’s and Michael's actual wrongful discharge claims are time-barred, and Michael’s constructive wrongful discharge claims fail to state a claim, it is unnecessary for the Court to address the issue of whether these three statutes
 
 *1233
 
 create a cause of action for wrongful discharge in violation of Virginia public policy.
 

 [13]
 

 . Defendants also assert that Benson's claim of intentional infliction of emotional distress did not allege sufficiently outrageous and intolerable conduct by Defendants. Since the Court finds that Benson did not allege severe emotional distress — the fourth element of the
 
 Womack
 
 test — it need not reach the issue of whether Defendants’ conduct was sufficiently outrageous and intolerable to state a claim.
 

 [14]
 

 .
 
 See supra
 
 note 4.