David E. HARRIS, et al., Plaintiffs,

v.

Kenneth HAYTER, in his individual capacity and as Sheriff of Washington County, Virginia, Defendant.

Civil Action Nos. 96–0091–A to 96–0095–A

United States District Court,
W.D. Virginia,
Abingdon Division.

July 18, 1997.

Thomas R. Scott, Jr., Grundy, VA, for Plaintiffs.

Steven R. Minor, Bristol, VA, for Defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This court exercises jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. For purposes of this motion, the above listed civil actions are consolidated in accordance with Fed.R.Civ.P.42(a). Plaintiffs David E. Harris, Norman Dayton Harris, John P. Roche, Kelvin B. Davenport, and John W. Tolliver ("Plaintiffs") allege a violation of their constitutional rights by Defendant Kenneth Hayter ("Hayter"), Sheriff of Washington County, Virginia. Presently before this court is Defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss all money damages claims against him in both his individual and official capacities. Not at issue before this court at this time are the Plaintiffs claims for equitable relief against Defendant in his official capacity as Sheriff of Washington County, Virginia. This motion is granted.

### I. Factual Background

Plaintiffs were employees of the sheriff's department of Washington County, Virginia. Hayter, the Democratic nominee for the

Sheriff's position, ousted the incumbent Republican nominee, Joe Mitchell, in the November 1995 election. Upon taking over the office, Hayter failed to reappoint Plaintiffs, who were employed as investigators, without articulating any justification for his decisions. Plaintiffs allege that they were discharged because they were perceived to be Republicans, and Hayter, a Democrat, wanted "to build a base of [his] loyal political supporters." There are also allegations in the complaint which allege that Plaintiffs were supporters of the incumbent Republican and some of the plaintiffs had helped place yard signs for the incumbent.

## II. Legal Analysis

### A. Official Capacity Claims

■ Defendants argue, and Plaintiffs conceded, that the money damages claims against Hayter in his official capacity as Sheriff of Washington County, Virginia should be dismissed. In Virginia, a suit against a sheriff in his official capacity is a suit against a state official. *Blankenship v. Warren County,* 918 F.Supp. 970, 974, *on recons.,* 931 F.Supp. 447, 449 (W.D.Va.1996); *McCoy v. Chesapeake Correctional Ctr.,* 788 F.Supp. 890, 893 (E.D.Va.1992). And a suit against a state official in his official capacity is a suit against a state. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). The state has Eleventh Amendment immunity from any action for damages against it unless Congress has abrogated that immunity or the state, itself, has waived the immunity. *McConnell v. Adams,* 829 F.2d 1319, 1328 (4th Cir.1987), *cert. denied sub nom., Virginia, ex rel. State Bd. of Elections v. Kilgore,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). There is no evidence of any abrogation or waiver of the immunity under the applicable laws of this case; therefore, Hayter, in his official capacity as Sheriff of Washington County, Virginia, is immune from suit for money damages. However, although sovereign immunity protects Hayter from liabilities for damages, equitable relief may still be available and appropriate. *Ex parte Young,*

209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

### B. Individual Capacity Claims

■ The Fourteenth Amendment, by incorporating the First Amendment and applying it to the states, precludes state and local governments from abridging the freedom of speech protected by the First Amendment. The First Amendment protects the freedom of "political association as well as political expression." *Buckley v. Valeo,* 424 U.S. 1, 15, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976).

■ The freedom of expression for public employees is governed by the case of *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Pickering,* the Supreme Court held that a public employer cannot discharge an employee because of his or her expression of ideas on any "matter of legitimate public concern" and developed a test which balances "the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1734–35. The Supreme Court further elaborated on the freedom of expression in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "In the application of this test, as it has been recently defined in *Connick v. Myers,* it is not necessary for the agency to prove that morale and efficiency in the agency have actually been adversely affected by the publication; it is sufficient that such damage to morale and efficiency is reasonably to be apprehended." *Jurgensen v. Fairfax County, Virginia,* 745 F.2d 868, 879 (4th Cir.1984). Therefore, under this general rule, an employer can take adverse employment action against an employee for engaging in protected speech if the employee's interest in the speech is outweighed by the employer's "interest in the effective and efficient fulfillment of its responsibilities to the public." *Joyner v. Lancaster,* 815 F.2d 20, 23 (4th Cir.1987) (quoting *Connick,* 461 U.S. at 150, 103 S.Ct. at 1692).

The freedom of political association is protected under a line of cases known as the

*Elrod/Branti* cases. The Supreme Court, in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), forbade the discharge of a "nonpolicymaking, nonconfidential government employee" based solely upon the employee's political affiliation. In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court refined this standard and held that the "ultimate inquiry" does not revolve around the labels "policymaker" or "confidential," but rather, whether the employer can prove that party affiliation is an appropriate requirement for the effective performance of the public office involved. *See McConnell v. Adams,* 829 F.2d 1319, 1323 (4th Cir.1987); *Stott v. Haworth,* 916 F.2d 134, 140 (4th Cir.1990); *Clark v. Brown,* 861 F.2d 66, 67 (4th Cir.1988).

■ To state a claim under both First Amendment protections, the employee must show that his or her speech constituted a "substantial" or "motivating factor" in the adverse employment decision. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Likewise, under both approaches, a public employer can escape liability if it can show that the adverse employment action would have taken place regardless of the employee's exercise of his or her rights protected by the First Amendment. *Id.* at 274, 97 S.Ct. at 569.

■ While the complaints in these cases are vague as to whether they are alleging *Connick/Pickering* claims and/or *Elrod Branti* claims, this court interprets the complaints, in their present form, as alleging *Elrod/Branti* patronage claims.[1] In response to these claims, Hayter asserts that he is entitled to qualified immunity for the claims charged against him in his individual capacity. When a defendant raises the qualified immunity defense, the court should ad-

dress it at the earliest possible stage because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Jackson v. Long,* 102 F.3d 722, 727 (4th Cir.1996) (quoting *Behrens v. Pelletier,* —— U.S. ——, ——, ——, 116 S.Ct. 834, 842, 838, 133 L.Ed.2d 773 (1996) (citations omitted)).

■ "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citing *Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975)). In other words, the question is whether Plaintiffs have alleged rights under the Constitution which were " 'clearly established in a particularized and relevant sense' so that the unlawfulness of the defendant's conduct would have been 'apparent' in light of existing law." *Zepp v. Rehrmann,* 79 F.3d 381, 387 (4th Cir.1996) (quoting *Pinder v. Johnson,* 54 F.3d 1169, 1173 (4th Cir.1995)); *see also Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992). This determination is "purely [a] legal question." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

■ After the Supreme Court's decision in *Harlow,* most circuits adopted what became known as the heightened pleading requirement which required that courts find before discovery proceeds that the defendant was not entitled to the defense of qualified immunity. Under this standard, a plaintiff who fails to plead the violation of a clearly established right will face dismissal of his

---

1. The complaints allege that Sheriff Hayter knew that some of the plaintiffs helped the incumbent Republican sheriff place signs, that all of the plaintiffs supported the incumbent Republican during his re-election bid against Hayter, and that Hayter had stated that he would not retain Plaintiffs if elected; however, there is no specific allegation of specific protected speech by Plaintiffs which motivated Hayter's decision to discharge Plaintiffs. (Plaintiffs' Compl. para. 16).

The complaints do specifically allege that Hayter's decision not to retain Plaintiffs was based on his desire "to build a base of loyal political supporters as his employees and [that therefore he] needed to dismiss all of former Sheriff Mitchell's employees." (Plaintiffs' Compl. para. 17). Nevertheless, this is a moot point due to this courts ruling that the complaints do not meet the heightened pleading standard. *See infra* n. 2.

complaint. *Dunbar Corp. v. Lindsey*, 905 F.2d 754, 763–64 (4th Cir.1990); *O'Bar v. Pinion*, 953 F.2d 74, 80 (4th Cir.1991). In 1993, the United States Supreme Court held that this heightened requirement could not be applied to § 1983 cases against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, the Court specifically refused to rule on whether the heightened requirement could be applied in § 1983 cases against government officials sued in their individual capacities. *Id.* The Fourth Circuit has also refused to rule on the issue, but has stated that the language of the Supreme Court in *Leatherman* "seemed almost to suggest" that the heightened pleading requirement would continue to apply to individual defendants. *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339 n. 5 (4th Cir.1994); *see also Dunbar Corp. v. Lindsey*, 905 F.2d 754, 764 (4th Cir.1990). This court has continued to apply the heightened pleading requirement in § 1983 case against individual defendants. *Collins v. Mullins*, CV–95–0150–B, 1996 WL 924766 (W.D.Va. May 16, 1996).

Therefore, this court must look to the complaints to determine if they allege a violation of a clearly established right. The complaints do allege a violation of Plaintiffs' First Amendment right to freedom of political association; however, this court must further determine whether this constitutional right was " 'clearly established in a particularized and relevant sense' so that the unlawfulness of the defendant's conduct would have been 'apparent' in light of existing law." *Zepp*, 79 F.3d at 387 (quoting *Pinder*, 54 F.3d at 1173). Plaintiffs' complaints allege that they were investigators with the Washington County police department. In oral argument, counsel for both Plaintiffs and Hayter argued qualified immunity in terms of deputy sheriffs. The complaints do not allege what the duties of an investigator in

Washington County are; therefore, this court is at a loss as to how these duties parallel with or diverge from those of a deputy sheriff. The duties of the Plaintiffs will determine whether the position that the Plaintiffs held was a policymaking or confidential position which determination is critical to the determination of qualified immunity.[2]

### 1. Deputy Sheriffs

If it is determined that an investigator's duties parallel those of a deputy sheriff, then this court must determine whether the law was clearly established that a sheriff could not fire a deputy sheriff solely because of political patronage. As counsel for Plaintiffs argued in oral argument, the Fourth Circuit has address this issue in *Jones v. Dodson*, 727 F.2d 1329 (4th Cir.1984), In *Jones*, two Democratic employees were terminated when the newly elected sheriff, who was a Republican, succeeded the incumbent Democratic sheriff. *Id.* at 1330. The jury returned a verdict in favor of the employees. The trial court granted the sheriffs motion for a judgment notwithstanding the verdict in the case of the employee who was a deputy sheriff on the basis of the *Elrod/Branti* exception because "affiliation with the employer's political party was essential to the effective performance of his duties in this small rural sheriffs office." *Id.* at 1333. The Fourth Circuit remanded the case to the district court because the district court had failed to properly elicit "specific factual findings of the actual reasons for the two discharges" particularly in regard to the special verdict submission. *Id.* at 1337. The Fourth Circuit further found error in the district court's order granting the judgment notwithstanding the verdict in the case of the deputy sheriff. The Fourth Circuit stated that it believed the district judge based this ruling on dictum espoused in *Ramey v. Harber*, 589 F.2d 753, 761 (4th Cir.1978) (Hall, J. concurring), which

**2.** Even if this court determined that the complaints alleged *Connick/Pickering* claims, the duties of the investigators would be critical in determining whether Hayter would be entitled to qualified immunity for these claims as well. Under the *Connick/Pickering* analysis, the public employer can constitutionally discharge an employee for engaging in protected speech if the speech

is disruptive to a point where the efficiency of the service provided and the employer's "interest in the effective and efficient fulfillment of its responsibilities to the public" outweighs the employee's interest in the speech. *See supra* p. 502. An employee's duties are an integral part of determining how disruptive the speech would be upon the public service.

emphasized the small-size factor. *Id.* at 1338 and n. 14. The Fourth Circuit held that *Branti* rejected the size or intimacy factor and the generalized notion that "mutual trust and confidence could only exist between members of the same political party in an agency of the small size there involved." *Id.* at 1338 (citing *Branti,* 445 U.S. at 520 n. 14, 100 S.Ct. at 1295 n. 14). It was under these circumstances that the court held that the duties of a deputy sheriff did not involve "policymaking" as defined by *Branti* and, therefore, were not subject to discharge based solely on their political affiliation. *Id.*

However, shortly after *Jones* was decided, this court held in *Whited v. Fields,* 581 F.Supp. 1444 (W.D.Va.1984), that a sheriff in Russell county could refuse to reappoint his deputy sheriffs and jailers solely because of their political affiliation. This court reasoned that since the law in Virginia held a sheriff liable—both civilly and criminally—for the actions of their deputies while under color of law, Virginia public policy allowed for the discharge of the deputies solely because of their political affiliation. *Id.* at 1455. In *Whited,* this court discussed *Jones* at length, *id.* at 1451–52, and specifically recognized *Jones* as holding that the size distinction of *Ramey* was not applicable under *Branti. Id.* at 1451. Nonetheless, this court held that its decision was not inconsistent with *Branti,* but rather was an exception to the *Elrod/Branti* rule. This court further reasoned in *Whited* that a jailer is within the same category as a deputy. The *Whited* case was not appealed to the Fourth Circuit and has never been overruled by the Fourth Circuit.

*Whited* is cited in the annotation to Virginia Code § 15.1–48 "Appointment of deputies; their powers; how removed," as holding: **"Sheriff may replace deputies and jailers belonging to another political party** whom he finds in office upon his election." *Whited* has also been quoted by the Eleventh Circuit in its decision affirming the dismissals of claims by former deputy sheriffs that their First Amendment rights were violated when the incoming sheriff discharged them for political reasons. *Terry v. Cook,* 866 F.2d 373, 377 (11th Cir.1989). Furthermore, in *Upton v. Thompson,* 930 F.2d 1209, 1218 (7th

Cir.1991), *cert. denied,* 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992), the Seventh Circuit held that because of "autonomy and discretionary authority" exercised by deputy sheriffs, political considerations were justified in employment decisions.

In a recent unpublished Fourth Circuit opinion, the court stated in relation to determining whether a public officer was entitled to qualified immunity:

> The area of discharge for the exercise of First Amendment rights, whether of free speech or political association, is one of the most complex that we have to apply. When the courts have applied it inconsistently to justify dismissals of some employees and not others, it is simply expecting far too much of an objectively reasonable elected chief clerk to conclude that he is not entitled to fire his chief deputy clerk when he takes office in order to have his own administration carry out the policies of his campaign.

*Conner v. McGraw,* 104 F.3d 358 (4th Cir. Dec.30, 1996). In the same decision, the court re-iterated a list of public job positions in which courts have differed in their application of *Elrod/Branti;* included in that list was the position of a deputy sheriff. *Id.* (citing *Stott v. Haworth,* 916 F.2d 134, 143–44 (4th Cir.1990)). The *Conner* decision quoted an earlier Fourth Circuit opinion, stating, "[i]t is also clear that application of *Elrod/Branti* in the various jurisdictions has produced seemingly inconsistent and unpredictable results." *Id.* (quoting *Stott,* 916 F.2d at 144). Furthermore, in *Pierson v. Gondles,* 693 F.Supp. 408 (E.D.Va.1988), the Eastern District of Virginia held that it was not "clearly established" that a re-elected sheriff could demote deputies who spoke out against him during the campaign.

This court first takes judicial notice of the fact that Russell County, which was the county involved in the *Whited* case, adjoins Washington County. At the time of the alleged unconstitutional action in this case, this court had held that the sheriff of a neighboring county could discharge his deputies solely because of their political affiliation. *See* discussion of *Whited, supra.* Furthermore, cases decided by the Seventh and Eleventh

circuits supported the holding in *Whited.* It is true that the Fourth Circuit in *Jones* held that a sheriff could not fire his deputies solely for their political affiliation; however, this decision did not address the public policy argument relied upon in *Whited,* and recent Fourth Circuit cases cast doubt on the "clearness" of the law.

In determining whether a defendant is entitled to qualified immunity, the focus is upon the reasonable person and whether he would have known that he was violating a clearly established constitutional right. The fact that at the time of the alleged violation there were precedents which supported Defendant's position is sufficient to establish that the dismissal of a deputy sheriff solely for political affiliation was not clearly prohibited. *See Clark v. Brown,* 861 F.2d 66, 68 (4th Cir.1988). Therefore, if the Plaintiffs in the present case are categorized as "deputies," Hayter would be entitled to qualified immunity.

#### 2. Investigators

If, however, an investigator's duties do not possess the peculiarities of a deputy sheriffs duties, namely imposing criminal and civil liability upon the sheriff, then this court cannot rely upon the *Whited* exception. This court would then have to analyze those duties to determine whether political affiliation is an appropriate requirement for the effective performance of an investigator's duties.

The complaints in these cases do not list the duties of an investigator, and this court cannot independently determine as a matter of law what these duties are. Nor, do the complaints generally allege that the investigator position is a non-policymaking or non-confidential employee position. Therefore, this court cannot determine from the complaints that Plaintiffs allege a violation of a "clearly established" constitutional right.

### III. CONCLUSION

The Eleventh Amendment bars Plaintiffs' claims for money damages against Hayter in his official capacity; therefore, these claims must be dismissed. Furthermore, since the complaints do not sufficiently allege viola-

tions of a "clearly established" constitutional right against Hayter in his individual capacity, these claims must also be dismissed. Plaintiffs' claims for equitable relief against Hayter in his official capacity are unaffected by this ruling.

### ORDER

For the reasons stated in the Memorandum Opinion entered this day, the Defendant's Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED. Plaintiffs claims for equitable relief against Hayter in his official capacity are unaffected by this order.